Dean A. Ziehl (CA Bar No. 84529)
Alan J. Kornfeld (CA Bar No. 130063)
Gillian N. Brown (CA Bar No. 205132)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California  90067-4100
Telephone: 310-277-6910
Facsimile:  310-201-0760
E-mail:  gbrown@pszjlaw.com

Special Counsel for R. Todd Neilson, Chapter 11
Trustee for Ezri Namvar

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>EZRI NEILSON,<br><br>               Debtor. | Case No.: 2:08-bk-32349-BR<br><br>Chapter 11<br><br>Adv. No. 2:11-ap-_____-BR<br><br>**COMPLAINT TO AVOID FRAUDULENT TRANSFERS; AND OBJECTIONS TO CLAIM NOS. 141-1 AND 142-1** |
| R. TODD NEILSON, solely in his capacity as chapter 11 trustee for EZRI NAMVAR,<br><br>             Plaintiff,<br><br>vs.<br><br>CANYON SPRINGS SHOPPING CENTER, LLC, a California limited liability company,<br><br>             Defendant. | |

R. Todd Neilson, solely in his capacity as chapter 11 trustee of the estate of Ezri Namvar ("Plaintiff"), alleges as follows upon knowledge with respect to himself and upon information and belief as to all other matters:

1

**NATURE OF THIS ACTION**

1.     In the year before his creditors filed an involuntary chapter 11 proceeding against him and certain entities that he controlled, Ezri Namvar moved millions of dollars and shuffled liabilities between entities that he owned and controlled in an effort to keep his business afloat, pay problematic debts, and avoid personal liability.  In one such instance, Ezri Namvar caused Namco Capital Group, Inc. ("Namco") to issue a $6.2 million promissory note in favor of Canyon Springs Shopping Center, LLC ("Defendant" or "Canyon Springs"), in order to relieve another of his companies from a liability that he feared might expose him to personal or criminal liability.

2.     Ezri Namvar executed a personal guaranty of the promissory note.  He also pledged as security for the note membership interests held by his family trust in Parox, LLC ("Parox"), which owns a majority interest in valuable, single-family apartment projects in Venice, California.  Ezri Namvar and the family trust received no consideration in return for the guarantee or the pledge.

3.     By this Complaint, Plaintiff seeks to avoid the both the guaranty and the pledge as fraudulent transfers, and objects to Canyon Springs' claims against the Namvar bankruptcy estate.

**JURISDICTION AND VENUE**

4.     On December 22, 2008 (the "Petition Date"), certain of Ezri Namvar's creditors filed an involuntary bankruptcy petition against him in the above-captioned bankruptcy case (the "Bankruptcy Case").  Ezri Namvar consented to an order for relief.  The order for relief was entered on or about January 29, 2009.  The instant adversary proceeding (the "Action") arises in and is related to the Bankruptcy Case.  Accordingly, this Court has jurisdiction over the subject matter of this Action pursuant to 28 U.S.C. §§ 157 and 1334.

5.     This is a core proceeding under 28 U.S.C. § 157(b)(2).

6.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1409(a).

**PARTIES**

7.     Plaintiff is the chapter 11 trustee in the above-captioned bankruptcy case, whom the Court appointed in an order dated March 11, 2009.

8.     Defendant Canyon Springs Shopping Center, LLC ("Canyon Springs") is a California limited liability company.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

59918-002\DOCS_LA:228541.5

**FACTUAL BACKGROUND**

**A.    The Namvar Bankruptcy Case**

9.    On December 22, 2008 (the "Petition Date"), an involuntary bankruptcy petition was filed against Ezri Namvar in the above-captioned Bankruptcy Case. Ezri Namvar consented to an order for relief. The order for relief was entered on or about January 29, 2009.

**B.    Related Bankruptcy Case**

10.    As of the Petition Date, Ezri Namvar was the majority shareholder, president, and Chief Executive Officer of Namco. On the Petition Date, certain of Namco's creditors filed an involuntary petition against Namco in a case pending before this Court as *In re Namco Capital Group, Inc.*, Case No. 2:08-bk-32333-BR.

**C.    The Canyon Springs Note and Security Agreement**

11.    Ezri Namvar was also an officer of Namco Financial Exchange ("NFE"), which acted as a qualified intermediary for effectuating exchanges under section 1031 of the Internal Revenue Code.

12.    On or about June 29, 2007, Canyon Springs sold its interests in a limited liability company for $12 million, of which $6.2 million was paid to NFE to be held for the benefit of Canyon Springs to effectuate a section 1031 exchange at a later time.

13.    Canyon Springs did not designate a property for use in a section 1031 exchange within the required 180-day period. Accordingly, NFE was required to remit the $6.2 million to Canyon Springs. NFE did not remit the $6.2 million to Canyon Springs, however, but continued to carry the liability on its books.

14.    In July 2008, NFE was in financial distress. Because NFE was supposed to be holding funds as a section 1031 intermediary, Ezri Namvar was concerned about liability for NFE's unpaid debts.[1]

15.    Accordingly, Ezri Namvar sought to have Namco assume NFE's $6.2 million liability to Canyon Springs. On information and belief, Canyon Springs required that this

---

[1] These concerns proved well-founded: On September 22, 2010, a federal grand jury in the Central District of California indicted Ezri Namvar and another NFE officer on five counts of wire fraud relating to acts involving funds deposited in NFE. *See United States v. Namvar et al.*, Case No. CR 10 01055 (C.D. Cal.).

3

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

substitution of liability be supported by Ezri Namvar's personal guaranty and secured by pledges of membership interests in Parox.

16.     On or about July 1, 2008, Namco issued a promissory note to Canyon Springs, which was amended on July 29, 2008 pursuant to an *Amended and Restated Secured Promissory Note* (as amended, the "Note"), which is appended hereto as **Exhibit 1**. The Note was in the principal sum of $6,198,506.65, plus interest accruing at the rate of eight percent per annum.

17.     Also on or about July 29, 2008, the following persons and entities (collectively, the "Assignors") entered into the *Assignment and Security Agreement* (the "A&S Agreement"), a true and correct copy of which is appended hereto as **Exhibit 2**. Pursuant to the A&S Agreement, the Assignors each pledged their collective 82% of the membership interests[2] in Parox in favor of Canyon Springs:

    **a.**    Ezri Namvar and his wife, Ilana Namvar, as Trustees of the Namvar Family Trust dated December 5, 1994 (the "Namvar Family Trust")[3] – 35%;

    **b.**    Beshmada, LLC ("Beshmada")[4] – 35%;

    **c.**    Ezri Namvar's brother, Homayoun (Tony) Namvar – 9%; and

    **d.**    Ezri Namvar's brother, Ramin Namvar – 3%.

18.     UCC-1 financing statements reflecting the security interests granted under the A&S Agreement were filed with the California Secretary of State on or about July 30, 2008.

19.     Ezri Namvar and the Namvar Family Trust did not receive any consideration in exchange for the A&S Agreement and the pledge of membership interests in Parox.

---

[2] Another of Ezri Namvar's brothers, Mousa Namvar, owns the remaining 18% of the membership interests in Parox. Mousa Namvar did not pledge his Parox membership interests in favor of Canyon Springs.

[3] The Namvar Family Trust was a self-settled, revocable family trust holding personal and community property contributed by Ezri Namvar. On May 11, 2010, Plaintiff filed a *Notice of Revocation of Namvar Family Trust, dated December 5, 1994* (Docket No. 291 in Case No. 08-32333-BR) (the "Notice of Revocation"). Pursuant to the Notice of Revocation, Plaintiff has standing to avoid the Pledge for the benefit of the estate of Ezri Namvar.

[4] In addition, Ezri Namvar executed the A&S Agreement on behalf of Beshmada in his capacity as then-manager of Beshmada. Beshmada's current manager is Louis Cicalese. Beshmada is a chapter 11 debtor and debtor in possession in before this Court in the case of *In re Beshmada, LLC* (Case no. 2:09-bk-25523-BR). Beshmada is commencing an adversary proceeding in its bankruptcy case to avoid the pledge of Beshmada's interests in Parox.

4

20.     Ezri Namvar also executed a personal guaranty, dated as of July 29, 2008, in favor of Canyon Springs for the full amount of Namco's obligations under the Note (the "Guaranty").  A true and correct copy of the Guaranty is attached hereto as **Exhibit 3**.  Ezri Namvar did not receive any consideration in exchange for his execution of the Guaranty.

**D.    Claim Nos. 141-1 and 142-1**

21.     On or about November 12, 2009, Canyon Springs filed a proof of claim in the Bankruptcy Case, designated as "Claim No. 141-1", for a general unsecured claim in the amount of $6,368,610.51, based on Ezri Namvar's Guaranty.  A true and correct copy of Claim No. 141-1 is attached hereto as **Exhibit 4.**

22.     Also on or about November 12, 2009, Canyon Springs caused to be filed a proof of claim form in the Bankruptcy Case, designated as "Claim No. 142-1," executed by Isaac Moradi, Canyon Springs' manager.  Claim No. 142-1 asserts a secured claim in the membership interests of Parox held by Plaintiff.  A true and correct copy of Claim No. 142-1 is attached hereto as **Exhibit 5**.

**FIRST CLAIM FOR RELIEF**

**(Avoidance of Obligations and Transfers Under the A&S Agreement --**

**Pursuant to 11 U.S.C. §§544(b) and 550; and Cal. Civil Code §§3439.04(a)(1), 3439.07)**

23.     Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

24.     The obligations incurred and transfers made under the A&S Agreement were incurred and made with the intent to hinder, delay, or defraud creditors of Ezri Namvar and the Namvar Family Trust.

25.     Accordingly, any obligations incurred or transfers made by Ezri Namvar or the Namvar Family Trust under the A&S Agreement are avoidable, and should be avoided, as fraudulent pursuant to 11 U.S.C. §§544(b) and 550, and Cal. Civil Code §§3439.04(a)(1) and 3439.07.

///

///

///

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

59918-002\DOCS_LA:228541.5

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## SECOND CLAIM FOR RELIEF

### (Avoidance of Obligations and Transfer Under the A&S Agreement --
### Pursuant to 11 U.S.C. §§544(b) and 550; and Cal. Civil Code §§3439.04(a)(2); 3439.07)

26.    Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

27.    Ezri Namvar and the Namvar Family Trust did not receive reasonably equivalent value in exchange for transfers made and obligations incurred pursuant to the A&S Agreement.

28.    At the time the obligations were incurred and the transfers made, Ezri Namvar and the Namvar Family Trust (i) were engaged or were about to be engaged in a business or transaction for which the remaining assets were unreasonably small in relation to the business or transaction, or (ii) intended to incur, or reasonably should have believed that they would incur, debts beyond their ability to pay as they came due.

29.    Accordingly, any obligations incurred or transfers made by Ezri Namvar or the Namvar Family Trust under the A&S Agreement are avoidable, and should be avoided, as fraudulent, pursuant to 11 U.S.C. §§ 544(b) and 550, and Cal. Civil Code §§ 3439.04; 3439.07.

## THIRD CLAIM FOR RELIEF

### (Avoidance of Obligations and Transfers Under the A&S Agreement --
### Pursuant to 11 U.S.C. §§544(b) and 550; and Cal. Civil Code §§3439.05; 3439.07)

30.    Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

31.    Ezri Namvar and the Namvar Family Trust did not receive reasonably equivalent value in exchange for transfers made and obligations incurred pursuant to the A&S Agreement.

32.    Ezri Namvar and the Namvar Family Trust were insolvent, or became insolvent as a result of the obligations incurred or transfers made pursuant to the A&S Agreement.

33.    There exists a creditor of Ezri Namvar or the Namvar Family Trust whose claim arose before the transfers were made or obligations incurred under the A&S Agreement.

6

34.     Accordingly, any obligations incurred or transfers made by Ezri Namvar or the Namvar Family Trust under the A&S Agreement are avoidable, and should be avoided, as fraudulent, pursuant to 11 U.S.C. §§ 544(b) and 550, and Cal. Civil Code §§ 3439.05; 3439.07.

## FOURTH CLAIM FOR RELIEF

### (Avoidance of Transfer and Obligations Under the A&S Agreement --
### Pursuant to 11 U.S.C. §§ 548(a)(1)(A) and 550)

35.     Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

36.     The obligations incurred and transfers made under the A&S Agreement were incurred and made with the intent to hinder, delay, or defraud creditors of Ezri Namvar and the Namvar Family Trust.

37.     Accordingly, any obligations incurred or transfers made by Ezri Namvar or the Namvar Family Trust under the A&S Agreement should be avoided as fraudulent pursuant to 11 U.S.C. §§ 548(a)(1)(A) and 550.

## FIFTH CLAIM FOR RELIEF

### (Avoidance of Transfer and Obligations Under the A&S Agreement --
### Pursuant to 11 U.S.C. §§ 548(a)(1)(B) and 550)

38.     Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

39.     Ezri Namvar and the Namvar Family Trust did not receive reasonably equivalent value in exchange for the obligations incurred and transfers made pursuant to the A&S Agreement.

40.     At the time the obligations were incurred and the transfers made, Ezri Namvar and the Namvar Family Trust (i) were insolvent, or became insolvent as a result of the obligations or transfers; (ii) were engaged or were about to be engaged in a business or transaction for which the remaining assets were unreasonably small in relation to the business or transaction, or (iii) intended to incur, or reasonably should have believed that they would incur, debts beyond their ability to pay as they came due.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

41.     Accordingly, any obligations incurred or transfers made by Ezri Namvar or the Namvar Family Trust under the A&S Agreement are avoidable, and should be avoided, as fraudulent pursuant to 11 U.S.C. §§ 548(a)(1)(B) and 550.

## SIXTH CLAIM FOR RELIEF

### (Avoidance of Obligations and Transfers Under the Guaranty --

### Pursuant to 11 U.S.C. §§544(b) and 550; and Cal. Civil Code §§3439.04(a)(1), 3439.07)

42.     Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

43.     The obligations incurred and transfers made under the Guaranty were incurred and made with the intent to hinder, delay, or defraud creditors of Ezri Namvar.

44.     Accordingly, any obligations incurred or transfers made by Ezri Namvar under the Guaranty are avoidable, and should be avoided, as fraudulent pursuant to 11 U.S.C. §§544(b) and 550, and Cal. Civil Code §§3439.04(a)(1) and 3439.07.

## SEVENTH CLAIM FOR RELIEF

### (Avoidance of Obligations and Transfer Under the Guaranty --

### Pursuant to 11 U.S.C. §§544(b) and 550; and Cal. Civil Code §§3439.04(a)(2); 3439.07)

45.     Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

46.     Ezri Namvar did not receive reasonably equivalent value in exchange for transfers made and obligations incurred pursuant to the Guaranty.

47.     At the time the obligations were incurred and the transfers made, Ezri Namvar (i) was engaged or was about to be engaged in a business or transaction for which the remaining assets were unreasonably small in relation to the business or transaction, or (ii) intended to incur, or reasonably should have believed that he would incur, debts beyond his ability to pay as they came due.

48.     Accordingly, any obligations incurred or transfers made by Ezri Namvar under the Guaranty are avoidable, and should be avoided, as fraudulent, pursuant to 11 U.S.C. §§ 544(b) and 550, and Cal. Civil Code §§ 3439.04; 3439.07.

8

Pachulski Stang Ziehl & Jones LLP
Attorneys At Law
Los Angeles, California

## EIGHTH CLAIM FOR RELIEF

### (Avoidance of Obligations and Transfers Under the Guaranty --

### Pursuant to 11 U.S.C. §§544(b) and 550; and Cal. Civil Code §§3439.05; 3439.07)

49.     Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

50.     Ezri Namvar did not receive reasonably equivalent value in exchange for transfers made and obligations incurred pursuant to the Guaranty.

51.     Ezri Namvar was insolvent, or became insolvent as a result of the obligations incurred or transfers made pursuant to the Guaranty.

52.     There exists a creditor of Ezri Namvar whose claim arose before the transfers were made or obligations incurred under the Guaranty.

53.     Accordingly, any obligations incurred or transfers made by Ezri Namvar under the Guaranty are avoidable, and should be avoided, as fraudulent, pursuant to 11 U.S.C. §§ 544(b) and 550, and Cal. Civil Code §§ 3439.05; 3439.07.

## NINTH CLAIM FOR RELIEF

### (Avoidance of Transfer and Obligations Under the Guaranty --

### Pursuant to 11 U.S.C. §§ 548(a)(1)(A) and 550)

54.     Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

55.     The obligations incurred and transfers made under the Guaranty were incurred and made with the intent to hinder, delay, or defraud creditors of Ezri Namvar.

56.     Accordingly, any obligations incurred or transfers made by Ezri Namvar under the Guaranty should be avoided as fraudulent pursuant to 11 U.S.C. §§ 548(a)(1)(A) and 550.

[remainder of page left intentionally blank]

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

9

**TENTH CLAIM FOR RELIEF**

**(Avoidance of Transfer and Obligations Under the Guaranty --**

**Pursuant to 11 U.S.C. §§ 548(a)(1)(B) and 550)**

57.     Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

58.     Ezri Namvar did not receive reasonably equivalent value in exchange for the obligations incurred and transfers made pursuant to the Guaranty.

59.     At the time the obligations were incurred and the transfers made, Ezri Namvar (i) was insolvent, or became insolvent as a result of the obligations or transfers; (ii) was engaged or were about to be engaged in a business or transaction for which the remaining assets were unreasonably small in relation to the business or transaction, or (iii) intended to incur, or reasonably should have believed that he would incur, debts beyond his ability to pay as they came due.

60.     Accordingly, any obligations incurred or transfers made by Ezri Namvar under the Guaranty are avoidable, and should be avoided, as fraudulent pursuant to 11 U.S.C. §§ 548(a)(1)(B) and 550.

**ELEVENTH CLAIM FOR RELIEF**

**(Objection to Claim No. 141-1)**

61.     Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

62.     Claim No. 141-1 is premised on the Guaranty, and so to the extent the Guaranty is avoided, is unenforceable under any agreement or applicable law.

63.     Accordingly, pursuant to 11 U.S.C. § 502(b)(1), Claim No. 141-1, filed in the Namvar bankruptcy case, should be disallowed in its entirety.

[remainder of page left intentionally blank]

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

59918-002\DOCS_LA:228541.5

### TWELFTH CLAIM FOR RELIEF

#### (Objection to Claim No. 142-1)

64.    Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

65.    Claim No. 142-1 is premised on the pledge of membership interests in Parox under the A&S Agreement, and so to the extent such obligations or transfers are avoided, is unenforceable under any agreement or applicable law.

66.    Accordingly, pursuant to 11 U.S.C. § 502(b)(1), Claim No. 142-1, filed in the Namvar bankruptcy case, should be disallowed in its entirety.

### THIRTEENTH CLAIM FOR RELIEF

#### (Objection to Claim Nos. 141-1 and 142-1 – Disallowance Under 11 U.S.C. §502(d))

67.    Plaintiff repeats and realleges each of the allegations set forth above as if fully set forth herein.

68.    Canyon Springs is an entity from which property is recoverable under 11 U.S.C. § 550.

69.    Accordingly, pursuant to 11 U.S.C. § 502(d), Claim Nos. 141-1 and 142-1 must be disallowed unless and until Canyon Springs pays the amount to Plaintiff or turns over to Plaintiff any property for which Canyon Springs is liable under 11 U.S.C. § 550.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests judgment on its Complaint as follows:

1.    On the First, Second, Third, Fourth and Fifth Claims for Relief, avoiding and setting aside all obligations incurred or transfers made under the A&S Agreement, including without limitation, the Pledge of membership interests in Parox;

2.    On the Sixth, Seventh, Eighth, Ninth and Tenth Claims for Relief, avoiding and setting aside the Guaranty;

3.    On the Eleventh Claim for Relief, disallowing claim no. 141-1 in its entirety;

4.    On the Twelfth Claim for Relief, disallowing claim no. 142-1 in its entirety;

11

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

5.    On the Thirteenth Claim for Relief, disallowing claim nos. 141-1 and 142-1 in their entirety under 11 U.S.C. § 502(d); and

6.    For such other and further relief as the Court may deem appropriate.

Dated:    January 26, 2011                    PACHULSKI STANG ZIEHL & JONES LLP

                            By    /s/ Gillian N. Brown
                                    Dean A. Ziehl
                                    Alan J. Kornfeld
                                    Gillian N. Brown

                                    Special Counsel for R. Todd Neilson,
                                    Chapter 11 Trustee for Ezri Namvar

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

12

12

1
2
3
4
5

# EXHIBIT 1

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## AMENDED AND RESTATED
## SECURED PROMISSORY NOTE

$6,198,506.65                    LOS ANGELES, CALIFORNIA                    July 29, 2008

FOR VALUE RECEIVED, Namco Capital Group, Inc., a California corporation ("*Borrower*"), promises to pay to Canyon Springs Shopping Center, LLC, a California limited liability company (including any subsequent holder hereof, "*Lender*"), or its order, at its office located at 9301 Wilshire Blvd. Suite 315, Beverly Hills, CA 90210, or at such other place as the holder hereof may designate, in lawful money of the United States of America, the principal sum of Six Million One Hundred Ninety Eight Thousand Five Hundred Six and 65/100 Dollars ($6,198,506.65), together with interest which accrues on the outstanding principal balance from time to time, until paid in full in accordance with the terms, conditions and provisions as hereinafter set forth in this Amended and Restated Promissory Note (this "*Note*"). This Note amends, restates, and supercedes that certain promissory note dated July 1, 2008, by Borrower in Favor of Lender in the amount of $6,198,506.65.

**INTEREST RATE.** Interest on the outstanding principal balance of this Note shall be computed and calculated based upon a three hundred sixty (360) day year and actual days elapsed and shall accrue at the rate of Eight Percent (8%) per annum (the "*Note Rate*") on the unpaid principal balance of this Note from time to time.

**PRINCIPAL AND INTEREST PAYMENTS.** Payments of interest only shall be due and payable monthly in arrears during the term of this Note, effective July 1, 2008. Payments on this Note shall be due and payable commencing on the first calendar day of the first full calendar month following the funding of this Note, and continuing on the first day of each successive calendar month thereafter until the Maturity Date (defined below). As additional consideration to the Lender for making the loan, this Note has been cross-collateralized by personal guaranties as well as limited liability company membership interests in Parox, LLC, a California limited liability company, held by The Namvar Family Trust dated December 5, 1994, Beshmada, LLC, a California limited liability company, Homayoun Namvar and Ramin Namvar, who have materially benefited by the Loan made by the Lender to the Borrower. Upon the Maturity Date, the entire unpaid obligation outstanding under this Note, and any other and/or instruments which further evidence or secure the indebtedness evidenced by this Note shall become due and payable in full (collectively, the "*Loan Documents*")

All payments due hereunder, including payments of principal and interest, shall be made to Lender in United States Dollars and shall be in the form of immediately available funds acceptable to the holder of this Note. Payments for any month which is not a full calendar month shall be prorated on the basis of a thirty (30) day month, based on the actual number of days elapsed.

**APPLICATION OF PAYMENTS.** All payments received by Lender from, or for the account of Borrower, due hereunder shall be applied by Lender, in its sole and absolute discretion, in the following manner, or in any other order or manner as Lender chooses:

      a.    First. To pay any and all interest due, owing and accrued under this Note;

      b.    Second. To pay any and all costs, advances, expenses or fees due, owing and payable to Lender, or paid or incurred by Lender, arising from or out of this Note, and the other Loan Documents; and

      c.    Third. Payment of the outstanding principal balance on this Note.

1

**EXHIBIT** ☐



All records of payments received by Lender shall be maintained at Lender's office, and the records of Lender shall, absent manifest error, be binding and conclusive upon Borrower. The failure of Lender to record any payment or expense shall not limit or otherwise affect the obligations of Borrower under this Note.

**MATURITY DATE.** On December 31, 2008 (the *"Maturity Date"*), the entire unpaid principal balance of this Note, and all unpaid accrued interest thereon, and all other charges outstanding under this Note and/or the other Loan Documents, shall be due and payable without demand or notice. In the event that Borrower does not pay this Note in full on the Maturity Date then, as of the Maturity Date and thereafter until paid in full, the interest accruing on the outstanding principal balance hereunder shall be computed, calculated and accrued on a daily basis at the Default Rate, as defined below.

**UNPAID INTEREST, CHARGES AND COSTS.** Interest, late charges, costs or expenses that are not received by Lender within five (5) calendar days from the date such interest, late charges, costs, or expenses become due, shall, at the sole discretion of Lender, be added to the principal balance and shall from the date due bear interest at the Default Rate until paid.

**HOLIDAY.** Whenever any payment to be made under this Note shall be due on a day other than a day on which Lender is open for business (*"Business Day"*), including Saturdays, Sundays and legal holidays generally recognized by banks doing business in California, then the due date for such payment shall be automatically extended to the next succeeding Business Day, and such extension of time shall in such cases be included in the computation of the interest portion of any payment due hereunder.

**NO OFFSETS OR DEDUCTIONS.** Except as expressly permitted by this Note, all payments under this Note shall be made by Borrower without any offset, decrease, reduction or deduction of any kind or nature whatsoever, including, but not limited to, any decrease, reduction or deduction for, or on account of, any offset, present or future taxes, present or future reserves, imposts or duties of any kind or nature, that are imposed or levied by or on behalf of any government or taxing agency, body or authority by or for any municipality, state or country. If at any time, present or future, Lender shall be compelled, by any Law, rule, regulation or any other such requirement which on its face or by its application requires or establishes reserves, or payment, deduction or withholding of taxes, imposts or duties, to act such that it causes or results in a decrease, reduction or deduction (as described above) in payment received by Lender under this Note, then Borrower shall pay to Lender such additional amounts, as Lender shall deem necessary and appropriate, such that every payment received under this Note, after such decrease, reserve, reduction, deduction, payment or required withholding, shall not be reduced in any manner whatsoever. (However, the foregoing shall not be applicable to the income taxes of Lender or other taxes imposed on the revenues of lenders generally.)

**DEFAULT.** Any one or more of the following events or occurrences shall constitute a default under this Note (hereinafter *"Default"*):

      (i)    Lender does not receive a payment in the amount and within the time and manner as set forth herein, provided that with regard to monthly payments, Borrower shall be allowed a three (3) day grace period before the failure to make the payment will be a Default; or

      (ii)    There shall be a default or event of default under any of the Loan Documents, which default or event of default is not remedied during any applicable cure period; or

      (iii)    Borrower or any of its agents, officers, members, partners, or any of the additional named individuals or entities which have collateralized their membership interest as set forth in

2

the loan documents, secure any additional loans, or any of them refinance any existing loan or further encumbers various collaterals or assets of the any entities of which such membership interests have been collateralized under the terms of this Promissory Note or any other Loan Documents without obtaining the prior written consent of Lender.

Upon the occurrence of a Default hereunder, Lender may, in its sole and absolute discretion, declare the entire unpaid principal balance, together with all accrued and unpaid interest thereon, and all other amounts and payments due hereunder, immediately due and payable, without notice or demand. Further, in case of Borrower's default under the terms of this Promissory Note, Lender may proceed against any one or all of the assets listed and collateralized as security for this loan.

**DEFAULT RATE.** From and after the occurrence of any Default in this Note whether by non-payment, maturity, acceleration, non-performance or otherwise, and until such Default has been cured, all outstanding amounts under this Note (including, but not limited to, interest, costs and late charges) shall bear interest at a cumulative monthly rate. (*"Default Rate"*) equal to the greater of two percent (2.0%) over the Note Rate, or the highest rate allowed by applicable law.

**PREPAYMENT.** The principal amount of this Note may be prepaid in whole or in part without any premium or penalty; provided, however, that written notice of prepayment is received by Lender at least five (5) days prior to the date of payment. Any such prepayment shall not result in a reamortization, deferral, postponement, suspension, or waiver of any and all principal or other payments due under this Note.

**LATE CHARGES.** Time is of the essence for all payments and other obligations due under this Note. Borrower acknowledges that if any payment required under this Note is not received by Lender within five (5) days after the same becomes due and payable, Lender will incur extra administrative expenses (i.e., in addition to expenses incident to receipt of timely payment) and the loss of the use of funds in connection with the delinquency in payment. Because, from the nature of the case, the actual damages suffered by Lender by reason of such administrative expenses and loss of the use of funds would be impracticable or extremely difficult to ascertain, Borrower agrees that ten percent (10%) of the amount of the delinquent payment, together with interest accruing on the entire principal balance of this Note at the Default Rate, as provided above, shall be the amount of damages which Lender is entitled to receive upon such breach, in compensation therefor. Therefore, Borrower shall, in such event, without further demand or notice, pay to Lender, as Lender's monetary recovery for such extra administrative expenses and loss of use of funds, liquidated damages in the amount of ten percent (10%) of the amount of the delinquent payment (in addition to interest at the Default Rate). The provisions of this paragraph are intended to govern only the determination of damages in the event of a breach in the performance of Borrower to make timely payments hereunder. Nothing in this Note shall be construed as in any way giving Borrower the right, express or implied, to fail to make timely payments hereunder, whether upon payment of such damages or otherwise. The right of Lender to receive payment of such liquidated and actual damages, and receipt thereof, are without prejudice to the right of Lender to collect such delinquent payments and any other amounts provided to be paid hereunder or under any of the Loan Documents, or to declare a default hereunder or under any of the Loan Documents.

**SECURITY.** This Note is secured by an Assignment and Security Agreement dated July __, 2008, cross collateralizing membership interests of Beshmada, LLC, a California limited liability company, The Namvar Family Trust, Homayoun Namvar, and Ramin Namvar, in Parox, LLC, a California limited liability company. Each of Ezri Namvar, Homayoun Namvar and Ramin Namvar has additionally personally guaranteed the payment of this Note and any additional amounts due under this Note.

3

**COSTS AND EXPENSES.** Borrower hereby agrees to pay any and all costs or expenses paid or incurred by Lender by reason of, as a result of, or in connection with the enforcement of this Note, the Deed of Trust, or any other Loan Documents, including, but not limited to, any and all attorney's fees and related costs when such costs or expenses are paid or incurred in connection with the enforcement of this Note, the Deed of Trust, and the other Loan Documents, or any of them, the protection or preservation of the collateral or security for this Note, or any other rights, remedies or interests of Lender, whether or not suit is filed. Borrower's agreement to pay any and all such costs and expenses includes, but is not limited to, costs and expenses incurred in or in connection with any bankruptcy proceeding, in enforcing any judgment obtained by Lender and in connection with any and all appeals therefrom, and in connection with the monitoring of any bankruptcy proceeding and its effect on Lender's rights and claims for recovery of the amounts due hereunder, any proceeding concerning relief from the automatic stay, use of cash collateral, proofs of claim, approval of a disclosure statement or confirmation of, or objections to confirmation of, any plan of reorganization. All such costs and expenses are immediately due and payable to Lender by Borrower upon demand therefor by Lender.

**WAIVERS.** Borrower hereby waives grace, diligence, presentment, demand, notice of demand, dishonor, notice of dishonor, protest, notice of protest, any and all exemption rights against the indebtedness evidenced by this Note and the right to plead any statute of limitations as a defense to the repayment of all or any portion of this Note, and interest thereon, to the fullest extent allowed by law, and all compensation of cross-demands pursuant to California Code of Civil Procedure Section 431.70. No delay, omission or failure on the part of Lender in exercising any right or remedy hereunder shall operate as a waiver of such right or remedy or any other right or remedy of Lender.

**MAXIMUM LEGAL RATE.** This Note is subject to the express condition that at no time shall Borrower be obligated, or required, to pay interest on the principal balance at a rate which could subject Lender to either civil or criminal liability as a result of such rate being in excess of the maximum rate which Lender is permitted to charge. If, by the terms of this Note, Borrower is, at any time, required or obligated to pay interest on the principal balance at a rate in excess of such maximum rate, then the rate of interest under this Note shall be deemed to be immediately reduced to such maximum rate and interest payable hereunder shall be computed at such maximum rate and any portion of all prior interest payments in excess of such maximum rate shall be applied, or shall retroactively be deemed to have been payments made, in reduction of the principal balance, as the case may be.

**AMENDMENT; GOVERNING LAW.** This Note may be amended, changed, modified, terminated or canceled only by a written agreement signed by the party against whom enforcement is sought for any such action. This Note shall be governed by, and construed under, the Laws of the State of California.

**AUTHORITY.** Borrower, and each person executing this Note on Borrower's behalf, hereby represents and warrants to Lender that, by its execution below, Borrower has the full power, authority and legal right to execute and deliver this Note and that the indebtedness evidenced hereby constitutes a valid and binding obligation of Borrower without exception or limitation. In the event that this Note is executed by more than one person or entity, the liability hereunder shall be joint and several. Any married person who is obligated on this Note, directly or indirectly, agrees that recourse may be had to such person's separate property in addition to any and all community property of such person.

**LENDER'S RIGHT TO TRANSFER.** Borrower acknowledges and agrees that Lender has the right to transfer, assign or hypothecate all or any part of the Note, to sell participations therein, and to substitute one or more new loans for all or any part of this Note in favor of Lender, and/or to otherwise take such other action as Lender may deem appropriate or desirable in connection with this Note; provided, however, that such transfer, assignment, hypothecation or participation shall be at no material expense to Borrower, and the principal amount and interest rate of this Note shall not be increased, nor shall the term

4

hereof be shortened, without Borrower's consent. Borrower agrees that it shall cooperate fully with Lender in connection with this paragraph and shall execute, and where appropriate, acknowledge, such documents as Lender or its assignee may require in connection therewith.

**LENDER'S RIGHT TO CURE.** Lender shall have the full right to cure any default under, or to pay any interest under or otherwise satisfy, any obligations under or with respect to this Note and the other Loan Documents; and/or the Property, and if Lender pays any amounts in connection therewith or cures any default thereunder, or makes any other advance to or for the benefit of Borrower and/or the Property, whether under this Note, under any of the Loan Documents, or otherwise, Lender may add any amounts so paid or advanced to the amounts evidenced by this Note and secured by the Loan Documents, and any and all such amounts shall be paid by Borrower to Lender upon demand, shall bear interest at the same rate specified to be paid on outstanding indebtedness under this Note until paid, and all such amounts shall be secured by the Loan Documents.

IN WITNESS WHEREOF, Borrower has executed this Note as of the day and year first above written.

Namco Capital Group, Inc.
A California corporation

By: Ezri Namvar
Its President

1

2

3

4

5

# EXHIBIT 2

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## ASSIGNMENT AND SECURITY AGREEMENT

THIS ASSIGNMENT AND SECURITY AGREEMENT (this "*Agreement*"), dated as of July 29, 2008, is made by Ezri Namvar and Ilana Namvar, as Trustees of the Namvar Family Trust dated December 5, 1994, Beshmada, LLC, a California limited liability company, Homayoun Namvar, and Ramin Namvar. (collectively, "*Assignors*"), in favor of Canyon Springs Shopping Center, LLC, a California limited liability ("*Lender*"), with reference to the following:

A.      Lender has made a certain loan to Namco Capital Group, Inc., a California corporation ("*Borrower*"), which loan is evidenced by a certain promissory note listed on <u>Exhibit A</u> attached hereto (the "*Note*"), made by Borrower in favor of Lender (the "*Loan*").

B.      Assignors collectively own 82% of the membership interests in Parox LLC, a California limited liability company (the "*Pledged Company*"). The Pledged Company owns the properties identified in <u>Exhibit B</u> attached hereto (collectively, the "*Properties*").

C.      Assignors have materially benefited from the Loan made by Lender to Borrower.

D.      As security for the obligations of Borrower under the Loan, Lender is requiring that Assignors execute and deliver this Agreement.

NOW, THEREFORE, in consideration of the premises, and for other good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, Assignors hereby agree as follows:

1.      <u>Collateral Assignment.</u> As security for performance of its obligations under the Loan, the performance of all other obligations of the Borrower, now existing or hereafter incurred under, arising out of or in connection with the Loan (all such obligations being herein collectively called the "**Obligations**"), Assignors hereby assign, transfers, pledges and grants, as collateral security, a security interest in all of Assignor's right, title and interest as members of the Pledged Company, including, without limitation: (i) all payments of whatever nature to become due to Assignors in respect of such interest and under the operating agreements of the Pledged Company (the "*Governing Documents*"), (ii) all of Assignors' respective claims, rights, powers, privileges, security interests, liens and remedies under the Governing Documents, and all of Assignors' membership interests in and to the Pledged Company, (iii) all of Assignor's rights under the Governing Documents to make determinations, to exercise any election (including, but not limited to, election of remedies) or option or to give or receive any notice, consent, amendment, waiver or approval together with full power and authority to demand, receive, enforce, collect or receipt for any of the foregoing or any property of the Pledged Company, to enforce or execute any checks, or other instruments or orders, to file any claims and to take any action which in the opinion of the Lender may be necessary or advisable in connection with any of the foregoing; provided that prior to the date upon which an event of default has occurred under the Note and any applicable notice and cure periods have expired (the "*Specified Date*"), Assignors shall, subject to the provisions of the following sentence, be entitled to exercise all of the rights assigned pursuant to this Paragraph 1. Assignors expressly acknowledge that if any default is outstanding hereunder or with respect to the Obligations, they shall not be entitled to receive any distributions from the Pledged Company until such time as the Obligations have been paid and performed in full, and any amounts received by Assignors in violation of this provision will be held in trust by Assignors for the benefit of Lender. All the rights assigned pursuant to this Paragraph 1 are hereinafter referred to as the "*Collateral*." From and after the



EXHIBIT

Specified Date, all of Assignors' respective right, title and interest in and to the Collateral shall cease to exist and Assignors shall have no further right to act in any respect as members in the Pledged Company. This Agreement constitutes a security agreement under the Commercial Code as enacted and in effect from time to time in California (the "*UCC*").

2.     Limitation on Obligations of the Lender. Notwithstanding anything herein to the contrary, Assignors shall remain liable under the Governing Documents to observe and perform all of the conditions and obligations to be performed and observed by it thereunder. Prior to the transfer of title to the Lender following a foreclosure hereunder, the Lender shall not have any obligation or liability under the Governing Documents by reason of or arising out of this Agreement, nor shall the Lender be obligated in any manner to perform any of the obligations of any Assignor under or pursuant to the Governing Documents.

3.     Remedies. Commencing on the Specified Date, the Lender shall be entitled to exercise all of the rights, powers and remedies (whether vested in it by this Agreement or by law) for the protection and enforcement of its rights in respect of the Collateral, and the Lender shall be entitled, without limitation, to exercise the following rights, which Assignors hereby agree to be commercially reasonable:

(a)     to give all consents, waivers and ratifications in respect of the Collateral and otherwise act with respect thereto as though it were the outright owner thereof (Assignors hereby irrevocably constituting and appointing the Lender the proxy and attorney-in-fact of Assignors, coupled with an interest, with full power of substitution to do so), including, without limitation, the right to exercise all of the rights and interests granted to the Lender pursuant to Paragraph 1 hereof; and

(b)     at any time or from time to time to sell, assign and deliver or grant options to purchase, all or any part of the Collateral, or any interest therein, at any public or private sale, without demand of performance, judicial hearing, advertisement or notice of intention to sell or of the time or place of sale or adjournment thereof or to redeem or otherwise (all of which are hereby waived, to the extent permitted by law, by Assignors), for cash, on credit or for other property, for immediate or future delivery without any assumption of credit risk, and for such price or prices and on such terms as the Lender in its absolute discretion may determine. Assignors hereby waive and release to the fullest extent permitted by law any right or equity of redemption with respect to the Collateral, whether before or after sale hereunder, and all rights, if any, of marshalling the Collateral and any other security for the Obligations or otherwise. At any such sale, unless prohibited by applicable law, the Lender may bid for and purchase all or any part of the Collateral so sold free from any such right or equity of redemption. The Lender shall not be liable for failure to collect or realize upon any or all of the Collateral or for any delay in so doing nor shall the Lender be under any obligation to take any action whatsoever with regard thereto. Assignors specifically acknowledge that the Lender might be unable to effect a public sale of the Collateral and might be required by applicable law to sell the Collateral by one or more private sales to a restricted group of purchasers who will be obligated to agree, among other things, to acquire the Collateral for the purchaser's own investment account with no view to the distribution or resale of the Collateral. Assignors further acknowledges that such private sales might result in the Lender's obtaining prices and terms which are less favorable than those which might have been obtained by public sales and agrees that such private sales will be deemed to have been made in a commercially reasonable manner and that the Lender will have no obligation to delay sale of the Collateral to permit any issuer to register the Collateral for public sale under the Securities Act of 1933.

4.     Remedies Cumulative. Each right, power and remedy of the Lender provided for in this Agreement or any other related loan document now or hereafter existing at law or in equity or by statute shall be cumulative and concurrent and shall be in addition to every other such right, power or remedy.

2

The exercise or beginning of the exercise by the Lender of any one or more of the rights, powers or remedies provided for in this Agreement or now or hereafter existing at law or in equity or by statute or otherwise shall not preclude the simultaneous or later exercise by the Lender of all such other rights, powers or remedies, and no failure or delay on the part of the Lender to exercise any such right, power or remedy shall operate as a waiver thereof.

5.     Application of Proceeds.  All moneys collected by the Lender upon any sale or other disposition of the Collateral, together with all other moneys received by the Lender hereunder, shall be applied:

(i) first, to the payment of all costs and expenses incurred by the Lender in connection with such sale, the delivery of the Collateral or the collection of any such moneys (including, without limitation, reasonable attorneys' fees and disbursements);

(ii) next, any surplus then remaining to the payment of any and all expenses and fees (including reasonable attorneys' fees and disbursements) incurred by the Lender under the Note;

(iii) next, any surplus then remaining to the payment of so much of the Obligations as constitutes unpaid principal;

(iv) next, any surplus then remaining to the payment of so much of the Obligations as constitutes accrued and unpaid interest; and

(v) finally, to the extent moneys remain after the application pursuant to preceding clauses (i), (ii), (iii) and (iv), to Assignors in accordance with the Governing Documents.

6.     Purchasers of Collateral.  Upon any sale of the Collateral by the Lender hereunder (whether by virtue of the power of sale herein granted, pursuant to judicial process or otherwise), the receipt of the Lender or the officer making the sale shall be a sufficient discharge to the purchaser or purchasers of the Collateral so sold, and such purchaser or purchasers shall not be obligated to see to the application of any part of the purchase money paid over to the Lender or such officer or be answerable in any way for the misapplication or non-application thereof.

7.     Indemnity.  Assignors agree to indemnify and hold harmless the Lender from and against any and all claims, demands, losses, judgments and liabilities (including liabilities for penalties) of whatsoever kind or nature and to reimburse the Lender for all costs and expenses, including reasonable attorneys' fees and disbursements, growing out of or resulting from this Agreement or the exercise by the Lender of any right or remedy granted to it hereunder (including, without limitation, any claims, losses and expenses related to or arising from liabilities or obligations of the Assignor, as a shareholder in the Pledged Company, existing on the Specified Date) including, without limitation, costs and expenses resulting from the negligence of the Lender but excluding those costs and expenses resulting from the gross negligence or willful misconduct of the Lender. If and to the extent that the obligations of any Assignors under this Paragraph 7 are unenforceable for any reason, Assignors hereby agree to make the maximum contribution to the payment and satisfaction of such obligations that is permissible under applicable law.

8.     Further Assurances.  Assignors agree that, at their own expense, they will execute and deliver, and if requested, they will file under the UCC or any similar statute of any other jurisdiction, such financing statements, continuation statements, assignments and other documents in such offices as the

3

Lender may deem necessary or appropriate and wherever required or permitted by law in order to perfect and preserve the Lender's security interest in the Collateral and hereby authorize the Lender to file financing statements and amendments thereto relative to all or any part of the Collateral without the signature of the Assignors where permitted by law, and agrees to do such further acts and things and to execute and deliver to the Lender such additional conveyances, assignments, agreements and instruments as the Lender may reasonably require or deem advisable to carry into effect the purposes of this Agreement or to further assure and confirm unto the Lender its rights, powers and remedies hereunder.

9.    <u>Transfer by the Assignor; Amendment to Governing Documents.</u>

(a)    Assignors will not sell or otherwise dispose of, grant any option with respect to, or mortgage, pledge or otherwise encumber any of the Collateral or any interest therein (except pursuant to this Agreement). Further, Assignors will not permit the Pledged Company to dispose of, grant any option with respect to, or mortgage, pledge or otherwise encumber any of the Pledged Company's assets or any interest therein, or otherwise incur any indebtedness (except as otherwise exists as of the date hereof).

(b)    Assignors will not consent to any amendment or modification of the Governing Document of the Pledged Company without the prior written consent of the Lender. Assignors shall give the Lender copies of all amendments and modifications to the Governing Documents promptly following the execution thereof.

(c)    Assignors shall not encumber or consent to encumber the Properties, title to which property is partially vested in Parox, LLC without the prior written consent of Lender. Except for a current indebtedness against the Properties, Assignors and each one of them shall not act to further encumber the property with any monetary or non-monetary encumbrances without the prior written consent of Lender. Recordation of any instrument in the chain of title of the Properties without Lender's prior written approval, reflecting further encumbrance of the Properties by the Assignors shall be a default under the terms of the Note as well as this Agreement.

10.    <u>Representations, Warranties and Covenants of the Assignor.</u>

(a)    Each Assignor represents and warrants that:

(i) it is the legal and beneficial owner of, and has good and marketable title to, the Collateral assigned hereunder, subject to no pledge, lien, mortgage, hypothecation, security interest, charge, option or other encumbrance whatsoever, except the liens and security interests created by this Agreement;

(ii) it has full power, authority and legal right to assign all the Collateral assigned hereunder;

(iii) this Agreement has been duly authorized, executed and delivered by it and constitutes a legal, valid and binding obligation of the Assignors enforceable in accordance with its terms;

(iv) no consent of any other party (including, without limitation, any lender, stockholder, member, individual, the Pledged Company, corporation, joint venture or creditor of the Assignor) and no consent, license, permit, approval or authorization of, exemption by, notice or report to, or registration, filing or declaration with, any governmental authority is required in connection with the execution, delivery or performance by Assignors of this Agreement;

4

(v) neither the execution, delivery or performance of this Agreement nor the consummation of the transactions herein contemplated, nor compliance with the terms and provisions hereof will violate any legal requirement applicable to it, or will conflict, or will be inconsistent with, or will result in any breach of any provision of, or constitute a default under, any mortgage, indenture, lease, contract or other agreement, instrument or undertaking to which Assignors is a party or which is binding upon Assignors or upon any of its assets or the Governing Documents and will not result in the creation or imposition of any lien or encumbrance on any of the assets of Assignors except as contemplated by this Agreement;

(vi) there is no action, suit or proceeding pending, or to the best knowledge of Assignor, threatened against or affecting Assignor, in any court at law or in equity, or before or by any governmental authority, which might have a material adverse effect on the business or financial condition of Assignors. Assignors are not in default with respect to or under any legal requirement applicable to it;

(vii) the Governing Documents have been duly executed and delivered by Assignors, are unmodified, and are in full force and effect and constitute the legal, valid and binding obligations of Assignors and, to the best knowledge of Assignors, of each other party thereto. Assignors have received no notice of default, and to the best knowledge of Assignors, there is no default on the part of any party to the Governing Documents and no event has occurred and is continuing which, with the passage of time or the giving of notice or both or neither would constitute a default under the Governing Documents; and

(viii) by virtue of the execution and delivery by Assignors of this Agreement, the Lender will obtain a valid and perfected lien upon and security interest in all of the Collateral as security for the repayment of the Obligations, prior to the rights of all other parties and all other liens and encumbrances thereon and security interests therein.

(b)      Except as set forth in this Agreement, Assignors covenant and agree that it will defend the Lender's right, title and security interest in and to the Collateral and the proceeds thereof against the claims and demands of all persons whomsoever; and Assignors covenant and agree that they will have like title to and right to pledge any other property at any time hereafter pledged or assigned to the Lender as additional Collateral hereunder and will likewise defend the right thereto and security interest therein of the Lender.

11.      Assignor's Obligations Absolute. The obligations of Assignors under this Agreement shall be absolute and unconditional and shall remain in full force and effect without regard to, and shall not be released, suspended, discharged, terminated or otherwise affected by, any circumstance or occurrence whatsoever, including, without limitation (a) any renewal, extension, amendment or modification of or addition or supplement to or deletion from the Note, or any other instrument or agreement referred to therein, or any assignment or transfer of any thereof; (b) any waiver, consent, extension, indulgence or other action or inaction under or in respect of any such agreement or instrument or this Agreement; (c) any furnishing of any additional security to the Lender or any acceptance thereof or any release of any security by the Lender; (d) any limitation on any party's liability or obligations under any such instrument or agreement or any invalidity or unenforceability, in whole or in part, of any such instrument or agreement or any term thereof; or (e) any bankruptcy, insolvency, reorganization, composition, adjustment, dissolution, liquidation or other like proceeding relating to any Assignor, or any action taken with respect to this Agreement by any trustee or receiver, or by any court, in any such proceeding, whether or not any Assignors shall have notice or knowledge of any of the foregoing.

5

12.     Release; Termination. At the time of repayment and performance by the Assignors, as applicable, of the Obligations in full, the Lender agrees to take such actions, at the expense of Assignors, as Assignors may reasonably request to release from the lien of this Agreement the Collateral and to assign, transfer and deliver to Assignors (without recourse and without any representation or warranty) such of the Collateral as may be in the possession of the Lender and as has not theretofore been sold or otherwise applied, together with any moneys at the time held by the Lender hereunder.

13.     Notices. Except as otherwise expressly provided herein, all notices, certificates, reports or other communications hereunder shall be in writing (which shall include facsimile communications). Notices shall be sent by registered or certified mail, return receipt requested, facsimile transmission or hand delivery (including by overnight courier service), addressed as follows:

if to the Lender:          Canyon Spring Shopping Center, LLC
                           9301 Wilshire Blvd. Suite 315
                           Beverly Hills, CA 90212
                           Att: Isaac Moradi

if to the Assignor:        Namco Capital Group, Inc.
                           12121 Wilshire Blvd., Suite 1400
                           Los Angeles, CA 90025
                           Attention: Hamid Taba
                           Telecopier: (310) 207-6308

Notices shall be deemed to have been given when delivered by hand, when transmitted by facsimile transmission, receipt confirmed, or three (3) Business Days after mailing. Any party, by notice given as provided in this Paragraph 13, may designate any further or different address to which subsequent notices or other communications shall be sent.

14.     Consent to Jurisdiction. To the extent permitted by law, Assignors hereby irrevocably:

(i) consents to any suit, action or proceeding with respect to this Agreement being, at the option of the Lender, brought in any court of competent jurisdiction located in the State of California, as the Lender may elect;

(ii) waives any objection that it may have now or hereafter to the venue of any such suit, action or proceeding in any such court and any claim that any of the foregoing have been brought in an inconvenient forum;

(iii) (a) acknowledges the competence of any such court, (b) submits to the jurisdiction of any such court in any suit, action or proceeding, and (c) agrees that the final judgment in any such suit, action or proceeding brought in any such court shall be conclusive and binding upon it and may be enforced in any court by a suit upon such judgment, a certified copy of which shall be conclusive evidence of its liability;

(iv) submits to the non-exclusive jurisdiction of the State and Federal Courts in California and agrees that service of process in any suit, action or proceeding brought in any such court may be made by mailing a copy of such process by registered or certified mail postage prepaid, return receipt requested to the address shown above or to any other address of which he shall have given written notice to the Lender; and

6

(v) waives all claims of error by reason of any service effected in accordance with the provisions of subparagraph (iv) above and agrees that such service shall be deemed in every respect effective service upon it in any suit, action or proceeding and shall be taken and held to be valid personal service upon or personal delivery to it, to the fullest extent permitted by law.

15.    Miscellaneous. This Agreement shall be binding upon the successors and assigns of the Assignors and shall inure to the benefit of and be enforceable by the Lender and its successors and assigns. This Agreement may be changed, waived, discharged or terminated only by an instrument in writing signed by the parties hereto. **THIS AGREEMENT SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH AND BE GOVERNED BY THE LAWS OF THE STATE OF CALIFORNIA, WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW.** The headings in this Agreement are for purposes of reference only and shall not limit or define the meaning hereof. This Agreement may be executed in any number of counterparts, each of which shall be an original, but all of which shall constitute one instrument. In the event that any provision of this Agreement shall prove to be invalid or unenforceable, such provision shall be deemed to be severable from the other provisions of this Agreement which shall remain binding on all parties hereto.

16.    **FINAL AGREEMENT.** **THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

7

IN WITNESS WHEREOF, Assignors have caused this Agreement to be executed as of the date first above written.

**The Namvar Family Trust dated 12/5/94**

_____
Ezri Namvar, Trustee

_____
Ilana Namvar, Trustee

**BESHMADA, LLC**

_____
Ezri Namvar
Manager

_____
Homayoun Namvar

_____
Ramin Namvar

8

## EXHIBIT A

### Promissory Note

9

## **EXHIBIT B**

### **Properties Owned**

10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 3

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## GUARANTY

THIS GUARANTY, dated as of July 29, 2008 ("Guaranty"), is executed by Ezri Namvar, an individual ("Guarantor"), in favor of Canyon Springs Shopping Center, LLC, a California limited liability company (the "Lender").

### RECITALS

A.    The Lender has made a certain loan to Namco Capital Group, Inc., a California corporation ("Obligor"), in the principal amount of Six Million One Hundred Ninety Eight Thousand Five Hundred Six Dollars and 65/100 ($6,198,506.65) (the "Loan") evidenced by that Certain Promissory Note dated July 1, 2008 as amended and restated on July 29, 2008 (the "Note").

C.    In order to induce the Lender to enter into the Loan with Obligor, Guarantor has offered to execute this Guarantee to the extent of full value of the Loan in favor of the Lender.

D.    Guarantor is an affiliate of Obligor and will receive substantial direct and indirect benefits from the performance of the Agreement by Lender.

### AGREEMENT

ACCORDINGLY, for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, and intending to be legally bound, Guarantor hereby agrees with Lender as follows:

1.    Guaranty. (a) Guarantor guarantees and promises to pay to Lender, or order, at Lender's office located at the address set forth in Section 4(a) hereof, on demand after the default by Obligor in the performance of its obligations under the Note or any other loan document securing the payment of the Loan, in lawful money of the United States, any and all Obligations (as hereinafter defined) consisting of payments due to Lender. For purposes of this Guaranty, the term "Obligations" shall mean and include all obligations of Obligor to pay principal, interest, late charges, costs, and other fees which may be owing at any time under the Loan, as any or all of them may from time to time be modified, amended, extended, or renewed.

(b)    This Guaranty is absolute, unconditional, continuing and irrevocable and constitutes an independent guaranty of payment and not of collectibility, and is in no way conditioned on or contingent upon any attempt to enforce in whole or in part any of the Obligations, the existence or continuance of Obligor as a legal entity, the consolidation or merger of Obligor with or into any other entity, the sale, lease or disposition by Obligor of all or substantially all of its assets to any other entity, or the bankruptcy or insolvency of Obligor, the admission by Obligor of its inability to pay its debts as they mature, or the making by Obligor of a general assignment for the benefit of, or entering into a composition or arrangement with, creditors. If Obligor shall fail to pay all or any part of the Obligations to Lender which are subject to this Guaranty as and when such Obligations are due, Guarantor shall forthwith pay the Obligations in immediately available funds. Each failure by Obligor to pay the Obligations, or part thereof, when due shall give rise to a separate cause of action, and separate suits may be brought hereunder as each cause of action arises.

(c)    Lender may at any time and from time to time, without the consent of or notice to Guarantor, except such notice as may be required by applicable statute which cannot be waived, without incurring responsibility to Guarantor, and without impairing or releasing the obligations of Guarantor



hereunder, (i) change the manner, place and terms of payment or change or extend the time of payment of, renew, or alter any Obligation hereby guaranteed, or in any manner modify, amend or supplement the terms of the Loan or any documents, instruments or agreements executed in connection therewith, (ii) exercise or refrain from exercising any rights against Obligor or others (including Guarantor) or otherwise act or refrain from acting, (iii) settle or compromise any Obligations hereby guaranteed and/or any obligations and liabilities (including any of those hereunder) incurred directly or indirectly in respect thereof or hereof, and may subordinate the payment of all or any part thereof to the payment of any obligations and liabilities which may be due to Lender or others, (iv) sell, exchange, release, surrender, realize upon or otherwise deal with in any manner or in any order any property pledged or mortgaged by anyone to secure or in any manner securing the Obligations hereby guaranteed, (v) take and hold security or additional security for any or all of the obligations or liabilities covered by this Guaranty, and (vi) assign its rights and interests under this Guaranty, in whole or in part.

(d)     No invalidity, irregularity or unenforceability of the Obligations hereby guaranteed shall affect, impair, or be a defense to this Guaranty. Guarantor agrees that Guarantor shall be liable even if Obligor had no liability at the time of entering into the Loan or thereafter ceased or ceases to be liable and agrees that by so doing Guarantor's liability may be larger in amount and more burdensome than that of Obligor.

(e)     This is a continuing Guaranty for which Guarantor receives continuing consideration and all obligations to which it applies or may apply under the terms hereof shall be conclusively presumed to have been created in reliance hereon and this Guaranty is therefore irrevocable without the prior written consent of Lender.

(f)     Any and all present and future debts and obligations of the Obligor to Guarantor are hereby postponed in favor of and subordinated to the full payment of the Obligations. Upon the liquidation, bankruptcy, or distribution of any of Obligor's assets, Guarantor shall assign to the Lender so much of Guarantor's claims on such debts and obligations so that the Lender shall receive all dividends, distributions, allocations and payments on such debts and obligations until payment in full of the Obligations. This section shall constitute such an assignment if Guarantor fails to execute and deliver such an assignment.

2.     Representations and Warranties. Guarantor represents and warrants to Lender that (a) this Guaranty has been duly executed and delivered by Guarantor and constitutes a legal, valid and binding obligation of Guarantor, enforceable against him in accordance with its terms, except as limited by bankruptcy, insolvency or other laws of general application relating to or affecting the enforcement of creditors' rights generally; (b) no litigation, investigation or proceeding of any court or other governmental tribunal is pending or, to the knowledge of Guarantor, threatened against Guarantor which, if adversely determined, could have a material adverse effect on Guarantor's ability to perform its obligations under this Guaranty; and (c) neither the execution and delivery of this Guaranty nor the fulfillment of or compliance with the terms and conditions of this Guaranty conflicts with or shall result in a breach of the terms, conditions or provisions of any agreement or instrument to which Guarantor is now a party or by which he is bound, or constitutes a default under any of the foregoing, or results in the creation or imposition of any lien, charge or encumbrance whatsoever upon any of the property or assets or Guarantor under the terms of any instrument or agreement or violates any provision of law or any order of any court or other agency of government.

3.     Waivers. (a) Guarantor, to the extent permitted under applicable law, hereby waives any right to require Lender to (i) proceed against Obligor or any other guarantor of Obligor's obligations under the Loan, (ii) proceed against or exhaust any security received from Obligor or any other guarantor

2

of Obligor's Obligations under the Loan, or (iii) pursue any other right or remedy in the Lender's power whatsoever.

(b)    Guarantor further waives, to the extent permitted by applicable law, (i) any defense resulting from the absence, impairment or loss of any right of reimbursement, subrogation, contribution or other right or remedy of Guarantor against Obligor, any other guarantor of the Obligations or any security; (ii) any setoff or counterclaim of Obligor or any defense which results from any disability or other defense of Obligor or the cessation or stay of enforcement from any cause whatsoever of the liability of Obligor (including, without limitation, the lack of validity or enforceability of the Loan); (iii) any right to exoneration of sureties which would otherwise be applicable; (iv) any right of subrogation or reimbursement and, if there are any other guarantors of the Obligations, any right of contribution, and right to enforce any remedy which Lender now has or may hereafter have against Obligor, and any benefit of, and any right to participate in, any security now or hereafter received by Lender as security for the payment of the Obligations; (v) all presentments, demands for performance, notices of non performance, notices delivered under the Loan, protests, notice of dishonor, and notices of acceptance of this Guaranty and of the existence, creation or incurring of new or additional Obligations and notices of any public or private foreclosure sale; (vi) any appraisement, valuation, stay, extension, moratorium redemption or similar law or similar rights for marshalling; (vii) the benefit of any statute of limitations; and (viii) any right to be informed by Lender of the financial condition of Obligor or any other guarantor of the Obligations or any change therein or any other circumstances bearing upon the risk of nonpayment or nonperformance of the Obligations. Guarantor has the ability to and assumes the responsibility for keeping informed of the financial condition of Obligor and any other guarantors of the Obligations and of other circumstances affecting such nonpayment and nonperformance risks.

(c)    As used in this paragraph, any reference to "the principal" includes Obligor, and any reference to "the creditor" includes the Lender. In accordance with Section 2856 of the California Civil Code, the Guarantor unconditionally and irrevocably waives any and all rights and defenses available to it by reason of Sections 2787 to 2855, inclusive, 2899 and 3433 of the California Civil Code. No other provision of this Guaranty shall be construed as limiting the generality of any of the covenants and waivers set forth in this paragraph.

4.    Miscellaneous.

(a)    Notices. Except as otherwise provided herein, all notices or other communications to or upon Lender or Guarantor under this Guaranty shall be in writing and telecopied, mailed or delivered to each party at telecopier number or its address set forth in the Agreement. All such notices and communications: when sent by Federal Express or other overnight service, shall be effective on the business day following the deposit with such service; when mailed, first class postage prepaid and addressed as aforesaid in the mails, shall be effective upon receipt; when delivered by hand, shall be effective upon delivery; and when telecopied, shall be effective upon confirmation of receipt. For notice purposes, the Lender's address is 9301 Wilshire Blvd. Suite 315, Beverly Hills, CA 90210; The Guarantor's notice address is 12121 Wilshire Blvd., Suite 1400, Los Angeles, CA 90025.

(b)    Nonwaiver. No failure or delay on Lender's part in exercising any right hereunder shall operate as a waiver thereof or of any other right nor shall any single or partial exercise of any such right preclude any other further exercise thereof or of any other right.

(c)    Amendments and Waivers. This Guaranty may not be amended or modified, nor may any of its terms be waived, except by written instruments signed by Guarantor and Lender. Each waiver or consent under any provision hereof shall be effective only in the specific instances for the purpose for which given.

3

(d)    Assignments.  This Guaranty shall be binding upon and inure to the benefit of Lender and Guarantor and their respective successors and assigns; provided, however, that without the prior written consent of Lender, Guarantor may not assign its rights and obligations hereunder.

(e)    Cumulative Rights, etc.  The rights, powers and remedies of Lender under this Guaranty shall be in addition to all rights, powers and remedies given to Lender by virtue of any applicable law, rule or regulation, the Loan or any other agreement, all of which rights, powers, and remedies shall be cumulative and may be exercised successively or concurrently without impairing Lender's rights hereunder.

(f)    Partial Invalidity.  If at any time any provision of this Guaranty is or becomes illegal, invalid or unenforceable in any respect under the law or any jurisdiction, neither the legality, validity or enforceability of the remaining provisions of this Guaranty nor the legality, validity or enforceability of such provision under the law of any other jurisdiction shall in any way be affected or impaired thereby.

(g)    Termination of Guaranty.  Guarantor's obligations under this Guaranty shall continue in full force and effect and this Guaranty shall not terminate until the Obligations are fully paid and discharged.  The Obligations shall not be considered fully paid and discharged unless and until all payments by the Obligor to the Lender are no longer subject to any right on the part of any person whomsoever, including, but not limited to, the Obligor, a debtor-in-possession, or any trustee or receiver in bankruptcy, to set aside such payments or seek to recoup the amount of such payments, or any part thereof.  The foregoing shall include, by the way of example and not by way of limitation, all rights to recover preferences voidable under Title 11 of the United States Code.  In the event that any such payments by the Obligor or Guarantor to the Lender are set aside after the making thereof, in whole or in part, or settled without litigation, to the extent of such settlement, all of which is within the Lender's discretion, Guarantor shall be liable joint and severally for the full amount the Lender is required to repay plus costs, interest, attorney's fees and any and all expenses which the Lender paid or incurred in connection therewith.

(h)    Governing Law; Jurisdiction.  This Guaranty shall be governed by and construed in accordance with the laws of the State of California without reference to conflicts of law rules.  The parties hereto hereby consent to the jurisdiction of any state or federal court located within Los Angeles County, California and irrevocably agree that all actions or proceedings arising out of or relating to this Guaranty shall be litigated in such courts.  Any such process or summons in connection with any such action or proceeding may be served by mailing a copy thereof by certified or registered mail, or any substantially similar form of mail, addressed to Guarantor as provided for notices hereunder.

(i)    Construction.  This Guaranty is the result of negotiations between, and has been reviewed by, Lender and Guarantor and their respective counsel.  Accordingly, this Guaranty shall be deemed to be the product of all parties hereto, and no ambiguity shall be construed in favor of or against Lender or Guarantor.

(j)    Jury Trial.  EACH OF GUARANTOR AND LENDER, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY AS TO ANY ISSUE RELATING HERETO IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS GUARANTY.

(k)    Attorneys Fees.  Guarantor agrees to pay all expenses (including reasonable attorneys' fees and expenses) paid or incurred by Lender in endeavoring to collect the Obligations, or any part thereof, and in enforcing this Guaranty and the Loan.

4

(l)    Bankruptcy.    Guarantor agrees that its obligations under this Guaranty shall be unconditional, irrespective of the disallowance, under Section 502 of the United States Bankruptcy Code, of all or any portion of Lender's claim(s) for repayment of the Obligations.

(m)    Entire Agreement.    This Guaranty embodies the entire agreement and understanding between the parties pertaining to the subject matter of this Guaranty, and supersedes all prior agreements, understandings, negotiations, representations and discussions, whether verbal or written, of the parties, pertaining to that subject matter.

IN WITNESS WHEREOF, Guarantor has caused this Guaranty to be executed as of the day and year first above written.

Ezri Namvar

5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 4

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

B10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT CENTRAL DISTRICT OF CALIFORNIA | PROOF OF CLAIM |
|---|---|

Name of Debtor:
EZRI NAMVAR

Case Number:
2:08-32349-BR

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (the person or other entity to whom the debtor owes money or property):
CANYON SPRINGS SHOPPING CENTER, LLC, a California limited liability company

☐ Check this box to indicate that this claim amends a previously filed claim.

Name and address where notices should be sent:
Canyon Springs Shopping Center, LLC
9301 Wilshire Boulevard, Suite 315
Beverly Hills, California 90210
Telephone number: 310-858-6985

Court Claim Number:
(If known)

Filed on:

Name and address where payment should be sent (if different from above):

Telephone number:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. Amount of Claim as of Date Case Filed:    $ 6,368,610.51

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

2. Basis for Claim: Guaranty for Money Loaned
(See instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies debtor:

3a. Debtor may have scheduled account as:
(See instruction #3a on reverse side.)

4. Secured Claim (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff:  ☐ Real Estate  ☐ Motor Vehicle  ☐ Other
Describe:

Value of Property:$ _____    Annual Interest Rate ___%

Amount of arrearage and other charges as of time case filed included in secured claim,

if any: $ _____    Basis for perfection: _____

Amount of Secured Claim: $ _____    Amount Unsecured: $ _____

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(___).

Amount entitled to priority:

6. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See instruction 7 and definition of "redacted" on reverse side.)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

FOR COURT USE ONLY

Date:
11/10/2009

Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

Canyon Springs Shopping Center, LLC,

By: _____

Isaac Moradi, Managing Member

American LegalNet, Inc.
www.FormsWorkflow.com

# EXHIBIT 

B 10 (Official Form 10) (12/08) – Cont.

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the bankruptcy debtor's name, and the bankruptcy case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is located at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

1. **Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

2. **Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if the trustee or another party in interest files an objection to your claim.

3. **Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

3a. **Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

4. **Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

5. **Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

6. **Credits:**
An authorized signature on the proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

7. **Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). If the claim is based on the delivery of health care goods or services, see instruction 2. Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

## DEFINITIONS

## INFORMATION

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity owed a debt by the debtor that arose on or before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment on a debt owed by the debtor that arose on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car.

A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A debtor also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax-identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.), and any applicable orders of the bankruptcy court.

American LegalNet, Inc.
www.FormsWorkflow.com

## ATTACHMENT TO PROOF OF CLAIM

### In Re Ezri Namvar
### United States Bankruptcy Court, Central District of California
### Case No. 2:08-32349

This attachment to Proof of Claim in the above-referenced case is submitted by Canyon Springs Shopping Center, LLC, a California limited liability company ("Lender").

### Attached Documentation In Support of Claim

1.    Amended and Restated Secured Promissory Note dated July 29, 2008 by Namco Capital Group, Inc., a California corporation ("Namco") in favor of Lender in the principal amount of $6,198,506.65 (the "Promissory Note"); and

2.    Guaranty of Ezri Namvar, an individual ("Ezri"), dated July 29, 2008 in favor of Lender.

3.    Schedule Of Principal and Interest Owing Under Note Through December 22, 2008.

4.    Schedule of Legal Fees Incurred In Connection With Note Through December 22, 2008.

### Overview of Obligation

Namco entered into and delivered the Promissory Note in favor of Lender to evidence a loan from Namco to Lender in the principal amount of $6,198,506.65.  To secure Namco's obligations under the Promissory Note, among other things, Ezri Namvar executed and delivered a Guaranty dated July 29, 2008 in favor of Lender, pursuant to which Ezri Namvar guaranteed the obligations of Namco under the Promissory Note.

Among other things, Namco defaulted on its obligations under the Promissory Note by failing to pay interest and principal when due and payable thereunder.  As a result, the obligation owing with respect to the Promissory Note, as of December 22, 2008 (the "Petition Date") includes, among other things, (1) the entire principal amount of $6,198,506.65, plus (2) interest in the amount of $141,854.89, plus (3) permitted costs and expenses in the principal amount of $28,248.97, representing a total obligation as of December 22, 2008 of $6,368,610.51.  Lender has not received any payment from Namco, any guarantor, or any other person or entity with respect to this obligation from and after September 9, 2008.

The Guaranty guaranties, among other things, the entire amount of the obligation owing with respect to the Promissory Note.

JMP\ 603723.1

39

**AMENDED AND RESTATED**
**SECURED PROMISSORY NOTE**

$6,198,506.65            LOS ANGELES, CALIFORNIA            July 29, 2008

FOR VALUE RECEIVED, Nemno Capital Group, Inc., a California corporation ("**Borrower**"), promises to pay to Canyon Springs Shopping Center, LLC, a California limited liability company (including any subsequent holder hereof, "**Lender**"), or its order, at its office located at 9301 Wilshire Blvd. Suite 315, Beverly Hills, CA 90210, or at such other place as the holder hereof may designate, in lawful money of the United States of America, the principal sum of Six Million One Hundred Ninety Eight Thousand Five Hundred Six and 65/100 Dollars ($6,198,506.65), together with interest which accrues on the outstanding principal balance from time to time, until paid in full in accordance with the terms, conditions and provisions as hereinafter set forth in this Amended and Restated Promissory Note (this "**Note**"). This Note amends, restates, and supersedes that certain promissory note dated July 1, 2008, by Borrower in Favor of Lender in the amount of $6,197,506.65.

**INTEREST RATE**. Interest on the outstanding principal balance of this Note shall be computed and calculated based upon a three hundred sixty (360) day year and actual days elapsed and shall accrue at the rate of Eight Percent (8%) per annum (the "**Note Rate**") on the unpaid principal balance of this Note from time to time.

**PRINCIPAL AND INTEREST PAYMENTS**. Payments of interest only shall be due and payable monthly in arrears during the term of this Note, effective July 1, 2008. Payments on this Note shall be due and payable commencing on the first calendar day of the first full calendar month following the funding of this Note, and continuing on the first day of each successive calendar month thereafter until the Maturity Date (defined below). As additional consideration to the Lender for making the loan, this Note has been cross-collateralized by personal guaranties as well as limited liability company membership interests in Parox, LLC, a California limited liability company, held by The Nemror Family Trust dated December 5, 1994, Benhmade, LLC, a California limited liability company, Homayoun Nemror and Ramin Nemror, who have materially benefited by the Loan made by the Lender to the Borrower. Upon the Maturity Date, the entire unpaid obligation outstanding under this Note, and any other and/or instruments which further evidence or secure the indebtedness evidenced by this Note shall become due and payable in full (collectively, the "**Loan Documents**")

All payments due hereunder, including payments of principal and interest, shall be made to Lender in United States Dollars and shall be in the form of immediately available funds acceptable to the holder of this Note. Payments for any month which is not a full calendar month shall be prorated on the basis of a thirty (30) day month, based on the actual number of days elapsed.

**APPLICATION OF PAYMENTS**. All payments received by Lender from, or for the account of Borrower, due hereunder shall be applied by Lender, in its sole and absolute discretion, in the following manner, or in any other order or manner as Lender chooses:

a.    First.  To pay any and all interest due, owing and accrued under this Note;

b.    Second.  To pay any and all costs, advances, expenses or fees due, owing and payable to Lender, or paid or incurred by Lender, arising from or out of this Note, and the other Loan Documents; and

c.    Third.  Payment of the outstanding principal balance on this Note.

1

All records of payments received by Lender shall be maintained at Lender's office, and the records of Lender shall, absent manifest error, be binding and conclusive upon Borrower. The failure of Lender to record any payment or expense shall not limit or otherwise affect the obligations of Borrower under this Note.

**MATURITY DATE.** On December 31, 2008 (the "*Maturity Date*"), the entire unpaid principal balance of this Note, and all unpaid accrued interest thereon, and all other charges outstanding under this Note and/or the other Loan Documents, shall be due and payable without demand or notice. In the event that Borrower does not pay this Note in full on the Maturity Date then, as of the Maturity Date and thereafter until paid in full, the interest accruing on the outstanding principal balance hereunder shall be computed, calculated and accrued on a daily basis at the Default Rate, as defined below.

**UNPAID INTEREST, CHARGES AND COSTS.** Interest, late charges, costs or expenses that are not received by Lender within five (5) calendar days from the date such interest, late charges, costs, or expenses become due, shall, at the sole discretion of Lender, be added to the principal balance and shall from the date due bear interest at the Default Rate until paid.

**HOLIDAY.** Whenever any payment to be made under this Note shall be due on a day other than a day on which Lender is open for business ("*Business Day*"), including Saturdays, Sundays and legal holidays generally recognized by banks doing business in California, then the due date for such payment shall be automatically extended to the next succeeding Business Day, and such extension of time shall in such cases be included in the computation of the interest portion of any payment due hereunder.

**NO OFFSETS OR DEDUCTIONS.** Except as expressly permitted by this Note, all payments under this Note shall be made by Borrower without any offset, decrease, reduction or deduction of any kind or nature whatsoever, including, but not limited to, any decrease, reduction or deduction for, or on account of, any offset, present or future taxes, present or future reserves, imposts or duties of any kind or nature, that are imposed or levied by or on behalf of any government or taxing agency, body or authority by or for any municipality, state or country. If at any time, present or future, Lender shall be compelled, by any law, rule, regulation or any other such requirement which on its face or by its application requires or establishes reserves, or payment, deduction or withholding of taxes, imposts or duties, to set such that it causes or results in a decrease, reduction or deduction (as described above) in payment received by Lender under this Note, then Borrower shall pay to Lender such additional amounts, as Lender shall deem necessary and appropriate, such that every payment received under this Note, after such decrease, reserve, reduction, deduction, payment or required withholding, shall not be reduced in any manner whatsoever. (However, the foregoing shall not be applicable to the income taxes of Lender or other taxes imposed on the revenues of lenders generally.)

**DEFAULT.** Any one or more of the following events or occurrences shall constitute a default under this Note (hereinafter "*Default*"):

      (i)    Lender does not receive a payment in the amount and within the time and manner as set forth herein, provided that with regard to monthly payments, Borrower shall be allowed a three (3) day grace period before the failure to make the payment will be a Default; or

      (ii)    There shall be a default or event of default under any of the Loan Documents, which default or event of default is not remedied during any applicable cure period; or

      (iii)    Borrower or any of its agents, officers, members, partners, or any of the additional named individuals or entities which have collateralized their membership interest as set forth in

2

the loan documents, secure any additional loans, or any of them refinance any existing loan or further encumber various collaterals or assets of the any entities of which such membership interests have been collateralized under the terms of this Promissory Note or any other Loan Documents without obtaining the prior written consent of Lender.

    Upon the occurrence of a Default hereunder, Lender may, in its sole and absolute discretion, declare the entire unpaid principal balance, together with all accrued and unpaid interest thereon, and all other amounts and payments due hereunder, immediately due and payable, without notice or demand. Further, in case of Borrower's default under the terms of this Promissory Note, Lender may proceed against any one or all of the assets listed and collateralized as security for this loan.

**DEFAULT RATE.** From and after the occurrence of any Default in this Note whether by non-payment, maturity, acceleration, non-performance or otherwise, and until such Default has been cured, all outstanding amounts under this Note (including, but not limited to, interest, costs and late charges) shall bear interest at a cumulative monthly rate ("Default Rate") equal to the greater of two percent (2.0%) over the Note Rate, or the highest rate allowed by applicable law.

**PREPAYMENT.** The principal amount of this Note may be prepaid in whole or in part without any premium or penalty; provided, however, that written notice of prepayment is received by Lender at least five (5) days prior to the date of payment. Any such prepayment shall not result in a reamortization, deferral, postponement, suspension, or waiver of any and all principal or other payments due under this Note.

**LATE CHARGES.** Time is of the essence for all payments and other obligations due under this Note. Borrower acknowledges that if any payment required under this Note is not received by Lender within five (5) days after the same becomes due and payable, Lender will incur extra administrative expenses (i.e., in addition to expenses incident to receipt of timely payment) and the loss of the use of funds in connection with the delinquency in payment. Because, from the nature of the case, the actual damages suffered by Lender by reason of such administrative expenses and loss of the use of funds would be impracticable or extremely difficult to ascertain, Borrower agrees that ten percent (10%) of the amount of the delinquent payment, together with interest accruing on the entire principal balance of this Note at the Default Rate, as provided above, shall be the amount of damages which Lender is entitled to receive upon such breach, in compensation therefor. Therefore, Borrower shall, in such event, without further demand or notice, pay to Lender, as Lender's monthly recovery for such extra administrative expenses and loss of use of funds, liquidated damages in the amount of ten percent (10%) of the amount of the delinquent payment (in addition to interest at the Default Rate). The provisions of this paragraph are intended to govern only the determination of damages in the event of a breach in the performance of Borrower to make timely payments hereunder. Nothing in this Note shall be construed as in any way giving Borrower the right, express or implied, to fail to make timely payments hereunder, whether upon payment of such damages or otherwise. The right of Lender to receive payment of such liquidated and actual damages, and receipt thereof, are without prejudice to the right of Lender to collect such delinquent payments and any other amounts provided to be paid hereunder or under any of the Loan Documents, or to declare a default hereunder or under any of the Loan Documents.

**SECURITY.** This Note is secured by an Assignment and Security Agreement dated July __, 2008, cross collateralizing membership interests of Beshmada, LLC, a California limited liability company, The Namvar Family Trust, Homayoun Namvar, and Ramin Namvar, in Parax, LLC, a California limited liability company. Each of Ezri Namvar, Homayoun Namvar and Ramin Namvar has additionally personally guaranteed the payment of this Note and any additional amounts due under this Note.

3

**COSTS AND EXPENSES.** Borrower hereby agrees to pay any and all costs or expenses paid or incurred by Lender by reason of, as a result of, or in connection with the enforcement of this Note, the Deed of Trust, or any other Loan Documents, including, but not limited to, any and all attorney's fees and related costs when such costs or expenses are paid or incurred in connection with the enforcement of this Note, the Deed of Trust, and the other Loan Documents, or any of them, the protection or preservation of the collateral or security for this Note, or any other rights, remedies or interests of Lender, whether or not suit is filed. Borrower's agreement to pay any and all such costs and expenses includes, but is not limited to, costs and expenses incurred in or in connection with any and all appeals therefrom, and in connection with the monitoring of any bankruptcy proceeding and its effect on Lender's rights and claims for recovery of the amounts due hereunder, any proceeding concerning relief from the automatic stay, use of cash collateral, proofs of claim, approval of a disclosure statement or confirmation of, or objections to confirmation of, any plan of reorganization. All such costs and expenses are immediately due and payable to Lender by Borrower upon demand therefor by Lender.

**WAIVERS.** Borrower hereby waives grace, diligence, presentment, demand, notice of demand, dishonor, notice of dishonor, protest, notice of protest, any and all exemption rights against the indebtedness evidenced by this Note and the right to plead any statute of limitations as a defense to the repayment of all or any portion of this Note, and interest thereon, to the fullest extent allowed by law, and all compensation of cross-demands pursuant to California Code of Civil Procedure Section 431.70. No delay, omission or failure on the part of Lender in exercising any right or remedy hereunder shall operate as a waiver of such right or remedy or any other right or remedy of Lender.

**MAXIMUM LEGAL RATE.** This Note is subject to the express condition that at no time shall Borrower be obligated, or required, to pay interest on the principal balance at a rate which could subject Lender to either civil or criminal liability as a result of such rate being in excess of the maximum rate which Lender is permitted to charge. If, by the terms of this Note, Borrower is, at any time, required or obligated to pay interest on the principal balance at a rate in excess of such maximum rate, then the rate of interest under this Note shall be deemed to be immediately reduced to such maximum rate and interest payable hereunder shall be computed at such maximum rate and any portion of all prior interest payments in excess of such maximum rate shall be applied, or shall retroactively be deemed to have been payments made, in reduction of the principal balance, as the case may be.

**AMENDMENT; GOVERNING LAW.** This Note may be amended, changed, modified, terminated or cancelled only by a written agreement signed by the party against whom enforcement is sought for any such action. This Note shall be governed by, and construed under, the Laws of the State of California.

**AUTHORITY.** Borrower, and each person executing this Note on Borrower's behalf, hereby represents and warrants to Lender that, by its execution below, Borrower has the full power, authority and legal right to execute and deliver this Note and that the indebtedness evidenced hereby constitutes a valid and binding obligation of Borrower without exception or limitation. In the event that this Note is executed by more than one person or entity, the liability hereunder shall be joint and several. Any married person who is obligated on this Note, directly or indirectly, agrees that recourse may be had to such person's separate property in addition to any and all community property of such person.

**LENDER'S RIGHT TO TRANSFER.** Borrower acknowledges and agrees that Lender has the right to transfer, assign or hypothecate all or any part of this Note, to sell participations therein, and to substitute one or more new loans for all or any part of this Note in favor of Lender, and/or to otherwise take such other action as Lender may deem appropriate or desirable in connection with this Note; provided, however, that such transfer, assignment, hypothecation or participation shall be at no material expense to Borrower, and the principal amount and interest rate of this Note shall not be increased, nor shall the term

4

hereof be shortened, without Borrower's consent. Borrower agrees that it shall cooperate fully with Lender in connection with this paragraph and shall execute, and where appropriate, acknowledge, such documents as Lender or its assignee may require in connection therewith.

<u>LENDER'S RIGHT TO CURE</u>. Lender shall have the full right to cure any default under, or to pay any interest under or otherwise satisfy, any obligations under or with respect to this Note and the other Loan Documents, and/or the Property, and if Lender pays any amounts in connection herewith or cures any default thereunder, or makes any other advance to or for the benefit of Borrower and/or the Property, whether under this Note, under any of the Loan Documents, or otherwise, Lender may add any amounts so paid or advanced to the amounts evidenced by this Note and secured by the Loan Documents, and any and all such amounts shall be paid by Borrower to Lender upon demand, shall bear interest at the same rate specified to be paid on outstanding indebtedness under this Note until paid, and all such amounts shall be secured by the Loan Documents.

IN WITNESS WHEREOF, Borrower has executed this Note as of the day and year first above written.

Namco Capital Group, Inc.
A California corporation

By: Ezri Namvar
Its: President

5

44

## GUARANTY

THIS GUARANTY, dated as of July 29, 2008 ("Guaranty"), is executed by Ezri Namvar, an individual ("Guarantor"), in favor of Canyon Springs Shopping Center, LLC, a California limited liability company (the "Lender").

### RECITALS

A.    The Lender has made a certain loan to Namco Capital Group, Inc., a California corporation ("Obligor"), in the principal amount of Six Million One Hundred Ninety Eight Thousand Five Hundred Six Dollars and 65/100 ($6,198,506.65) (the "Loan") evidenced by that Certain Promissory Note dated July 1, 2007 as amended and restated on July 29, 2008 (the "Note").

C.    In order to induce the Lender to enter into the Loan with Obligor, Guarantor has offered to execute this Guarantee to the extent of full value of the Loan in favor of the Lender.

D.    Guarantor is an affiliate of Obligor and will receive substantial direct and indirect benefits from the performance of the Agreement by Lender.

### AGREEMENT

ACCORDINGLY, for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, and intending to be legally bound, Guarantor hereby agrees with Lender as follows:

1.    Guaranty. (a)  Guarantor guarantees and promises to pay to Lender, or order, at Lender's office located at the address set forth in Section 4(a) hereof, on demand after the default by Obligor in the performance of its obligations under the Note or any other loan document securing the payment of the Loan, in lawful money of the United States, any and all Obligations (as hereinafter defined) consisting of payments due to Lender. For purposes of this Guaranty, the term "Obligations" shall mean and include all obligations of Obligor to pay principal, interest, late charges, costs, and other fees which may be owing at any time under the Loan, as any or all of them may from time to time be modified, amended, extended, or renewed.

(b)    This Guaranty is absolute, unconditional, continuing and irrevocable and constitutes an independent guaranty of payment and not of collectibility, and is in no way conditioned on or contingent upon any attempt to enforce in whole or in part any of the Obligations, the existence or continuance of Obligor as a legal entity, the consolidation or merger of Obligor with or into any other entity, the sale, lease or disposition by Obligor of all or substantially all of its assets to any other entity, or the bankruptcy or insolvency of Obligor, the admission by Obligor of its inability to pay its debts as they mature, or the making by Obligor of a general assignment for the benefit of, or entering into a composition or arrangement with, creditors. If Obligor shall fail to pay all or any part of the Obligations to Lender which are subject to this Guaranty as and when such Obligations are due, Guarantor shall forthwith pay the Obligations in immediately available funds. Each failure by Obligor to pay the Obligations, or part thereof, when due shall give rise to a separate cause of action, and separate suits may be brought hereunder as each cause of action arises.

(c)    Lender may at any time and from time to time, without the consent of or notice to Guarantor, except such notice as may be required by applicable statute which cannot be waived, without incurring responsibility to Guarantor, and without impairing or releasing the obligations of Guarantor

hereunder, (i) change the manner, place and terms of payment or change or extend the time of payment of, renew, or alter any Obligation hereby guaranteed, or in any manner modify, amend or supplement the terms of the Loan or any documents, instruments or agreements executed in connection therewith, (ii) exercise or refrain from exercising any rights against Obligor or others (including Guarantor) or otherwise act or refrain from acting, (iii) settle or compromise any Obligations hereby guaranteed and/or any obligations and liabilities (including any of those hereunder) incurred directly or indirectly in respect thereof or hereof, and may subordinate the payment of all or any part thereof to the payment of any obligations and liabilities which may be due to Lender or others, (iv) sell, exchange, release, surrender, realize upon or otherwise deal with in any manner or in any order any property pledged or mortgaged by anyone to secure or in any manner securing the Obligations hereby guaranteed, (v) take and hold security or additional security for any or all of the obligations or liabilities covered by this Guaranty, and (vi) assign its rights and interests under this Guaranty, in whole or in part.

(d)    No invalidity, irregularity or unenforceability of the Obligations hereby guaranteed shall affect, impair, or be a defense to this Guaranty. Guarantor shall be liable even if Obligor had no liability at the time of entering into the Loan or thereafter ceased or ceases to be liable and agrees that by so doing Guarantor's liability may be larger in amount and more burdensome than that of Obligor.

(e)    This is a continuing Guaranty for which Guarantor receives continuing consideration and all obligations to which it applies or may apply under the terms hereof shall be conclusively presumed to have been created in reliance hereon and this Guaranty is therefore irrevocable without the prior written consent of Lender.

(f)    Any and all present and future debts and obligations of the Obligor to Guarantor are hereby postponed in favor of and subordinated to the full payment of the Obligations. Upon the liquidation, bankruptcy, or distribution of any of Obligor's assets, Guarantor shall assign to the Lender so much of Guarantor's claims on such debts and obligations so that the Lender shall receive all dividends, distributions, allocations and payments on such debts and obligations until payment in full of the Obligations. This section shall constitute such an assignment if Guarantor fails to execute and deliver such an assignment.

2.    Representations and Warranties. Guarantor represents and warrants to Lender that (a) this Guaranty has been duly executed and delivered by Guarantor and constitutes a legal, valid and binding obligation of Guarantor, enforceable against him in accordance with its terms, except as limited by bankruptcy, insolvency or other laws of general application relating to or affecting the enforcement of creditors' rights generally; (b) no litigation, investigation or proceeding of any court or other governmental tribunal is pending or, to the knowledge of Guarantor, threatened against Guarantor which, if adversely determined, could have a material adverse effect on Guarantor's ability to perform its obligations under this Guaranty; and (c) neither the execution and delivery of this Guaranty nor the fulfillment of or compliance with the terms and conditions of this Guaranty conflicts with or shall result in a breach of the terms, conditions or provisions of any agreement or instrument to which Guarantor is now a party or by which he is bound, or constitutes a default under any of the foregoing, or results in the creation or imposition of any lien, charge or encumbrance whatsoever upon any of the property or assets of Guarantor under the terms of any instrument or agreement or violates any provision of law or any order of any court or other agency of government.

3.    Waivers. (a) Guarantor, to the extent permitted under applicable law, hereby waives any right to require Lender to (i) proceed against Obligor or any other guarantor of Obligor's obligations under the Loan, (ii) proceed against or exhaust any security received from Obligor or any other guarantor

2

of Obligor's Obligations under the Loan, or (iii) pursue any other right or remedy in the Lender's power whatsoever.

(b)    Guarantor further waives, to the extent permitted by applicable law, (i) any defense resulting from the absence, impairment or loss of any right of reimbursement, subrogation, contribution or other right or remedy of Guarantor against Obligor, any other guarantor of the Obligations or any security; (ii) any setoff or counterclaim of Obligor or any defense which results from any disability or other defense of Obligor or the cessation or stay of enforcement from any cause whatsoever of the liability of Obligor (including, without limitation, the lack of validity or enforceability of the Loan); (iii) any right to exoneration of sureties which would otherwise be applicable; (iv) any right of subrogation or reimbursement and, if there are any other guarantors of the Obligations, any right of contribution, and right to enforce any remedy which Lender now has or hereafter have against Obligor, and any benefit of, and any right to participate in, any security now or hereafter received by Lender as security for the payment of the Obligations; (v) all presentments, demands for performance, notices of non-performance, notices delivered under the Loan, protests, notices of dishonor, and notices of acceptance of this Guaranty and of the existence, creation or incurring of new or additional Obligations and notices of any public or private foreclosure sales; (vi) any appraisement, valuation, stay, extension, moratorium redemption or similar law or similar rights for marshaling; (vii) the benefit of any statute of limitations; and (viii) any right to be informed by Lender of the financial condition of Obligor or any other guarantor of the Obligations or any changes therein or any other circumstances bearing upon the risk of nonpayment or nonperformance of the Obligations. Guarantor has the ability to and assumes the responsibility for keeping informed of the financial condition of Obligor and any other guarantors of the Obligations and of other circumstances affecting such nonpayment and nonperformance risks.

(c)    As used in this paragraph, any reference to "the principal" includes Obligor, and any reference to "the creditor" includes the Lender. In accordance with Section 2856 of the California Civil Code, the Guarantor unconditionally and irrevocably waives any and all rights and defenses available to it by reason of Sections 2787 to 2855, inclusive, 2899 and 3433 of the California Civil Code. No other provision of this Guaranty shall be construed as limiting the generality of any of the covenants and waivers set forth in this paragraph.

4.    **Miscellaneous.**

(a)    **Notices.** Except as otherwise provided herein, all notices or other communications to or upon Lender or Guarantor under this Guaranty shall be in writing and telecopied, mailed or delivered to each party at telecopier number or its address set forth in the Agreement. All such notices and communications: when sent by Federal Express or other overnight service, shall be effective on the business day following the deposit with such service; when mailed, first class postage prepaid and addressed as aforesaid in the mails, shall be effective upon receipt; when delivered by hand, shall be effective upon hand delivery; and when telecopied, shall be effective upon confirmation of receipt. For notice purposes, the Lender's address is 9301 Wilshire Blvd. Suite 315, Beverly Hills, CA 90210; The Guarantor's notice address is 12121 Wilshire Blvd., Suite 1400, Los Angeles, CA 90025.

(b)    **Nonwaiver.** No failure or delay on Lender's part in exercising any right hereunder shall operate as a waiver thereof or of any other right nor shall any single or partial exercise of any such right preclude any other further exercise thereof or of any other right.

(c)    **Amendments and Waivers.** This Guaranty may not be amended or modified, nor may any of its terms be waived, except by written instruments signed by Guarantor and Lender. Each waiver or consent under any provision hereof shall be effective only in the specific instances for the purpose for which given.

3

(d)  Assignments.  This Guaranty shall be binding upon and inure to the benefit of Lender and Guarantor and their respective successors and assigns; provided, however, that without the prior written consent of Lender, Guarantor may not assign its rights and obligations hereunder.

(e)  Cumulative Rights, etc.  The rights, powers and remedies of Lender under this Guaranty shall be in addition to all rights, powers and remedies given to Lender by virtue of any applicable law, rule or regulation, the Loan or any other agreement, all of which rights, powers, and remedies shall be cumulative and may be exercised successively or concurrently without impairing Lender's rights hereunder.

(f)  Partial Invalidity.  If at any time any provision of this Guaranty is or becomes illegal, invalid or unenforceable in any respect under the law or any jurisdiction, neither the legality, validity or enforceability of the remaining provisions of this Guaranty nor the legality, validity or enforceability of such provision under the law of any other jurisdiction shall in any way be affected or impaired thereby.

(g)  Termination of Guaranty.  Guarantor's obligations under this Guaranty shall continue in full force and effect and this Guaranty shall not terminate until the Obligations are fully paid and discharged.  The Obligations shall not be considered fully paid and discharged unless and until all payments by the Obligor to the Lender are no longer subject to any right on the part of any person whomsoever, including, but not limited to, the Obligor, a debtor-in-possession, or any trustee or receiver in bankruptcy, to set aside such payments or seek to recoup the amount of such payments, or any part thereof.  The foregoing shall include, by the way of example and not by way of limitation, all rights to recover preferences voidable under Title 11 of the United States Code.  In the event that any such payments by the Obligor or Guarantor to the Lender are set aside after the making thereof, in whole or in part, or settled without litigation, to the extent of such settlement, all of which is within the Lender's discretion, Guarantor shall be liable joint and severally for the full amount the Lender is required to repay plus costs, interest, attorney's fees and any and all expenses which the Lender paid or incurred in connection therewith.

(h)  Governing Law; Jurisdiction.  This Guaranty shall be governed by and construed in accordance with the laws of the State of California without reference to conflicts of law rules.  The parties hereto hereby consent to the jurisdiction of any state or federal court located within Los Angeles County, California and irrevocably agree that all actions or proceedings arising out of or relating to this Guaranty shall be litigated in such courts.  Any such process or summons in connection with any such action or proceeding may be served by mailing a copy thereof by certified or registered mail, or any substantially similar form of mail, addressed to Guarantor as provided for notices hereunder.

(i)  Construction.  This Guaranty is the result of negotiations between, and has been reviewed by, Lender and Guarantor and their respective counsel.  Accordingly, this Guaranty shall be deemed to be the product of all parties hereto; and no ambiguity shall be construed in favor of or against Lender or Guarantor.

(j)  Jury Trial.  EACH OF GUARANTOR AND LENDER, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY AS TO ANY ISSUE RELATING HERETO IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS GUARANTY.

(k)  Attorneys Fees.  Guarantor agrees to pay all expenses (including reasonable attorneys' fees and expenses) paid or incurred by Lender in endeavoring to collect the Obligations, or any part thereof, and in enforcing this Guaranty and the Loan.

4

(l)     Bankruptcy.   Guarantor agrees that its obligations under this Guaranty shall be unconditional, irrespective of the disallowance, under Section 502 of the United States Bankruptcy Code, of all or any portion of Lender's claim(s) for repayment of the Obligations.

(m)    Entire Agreement.   This Guaranty embodies the entire agreement and understanding between the parties pertaining to the subject matter of this Guaranty, and supersedes all prior agreements, understandings, negotiations, representations and discussions, whether verbal or written, of the parties, pertaining to that subject matter.

IN WITNESS WHEREOF, Guarantor has caused this Guaranty to be executed as of the day and year first above written.



Sam Namvar

5

## NAMCO PROMISSORY NOTE

**Account Summary**

| | Amount | 10% Late & Penalties | 2% Default Fees | Cumulative Int Balance |
|---|---|---|---|---|
| Promissory Note Amount as of 7/29/08 | $ 6,198,506.65 | | | |
| Add: 2008 Interest @8%/annum | | | | |
| August 01-31, 200 | 41,323.38 | | | |
| September 01-30, 200 | 41,323.38 | | | |
| Payment received chk# dtd 9/9/08 | (82,646.76) | | | |
| October 01-31, 2008 | 41,323.38 | 4,214.98 | 826.47 | 41,323.38 |
| November 01-30, 2008 | 41,323.38 | 8,429.97 | 1,652.94 | 82,646.76 |
| December 01-22, 2008 | 30,303.81 | 11,520.96 | 2,259.01 | 112,950.57 |
| **Total Interest 2008** | **112,950.56** | **24,165.91** | **4,738.41** | |

Amount column: $ 6,198,506.65 ... 141,854.89

**Promissory Note Balance as of 12/22/08**   $ 6,340,361.54

**General Ledger (Cash)**
**Canyon Springs - (cany)**
**January 2008 - December 2008**

| Date | Period | Description | Refer | Amount |
|---|---|---|---|---|
| | | Legal | | |
| 8/13/2008 | 08/08 | (120124) Law Offices of Fred F. Mashian | 10407 | 2,252.50 |
| 9/17/2008 | 09/08 | (120126) *Law Offices of Fred F. Mashian | 10408 | 360.47 |
| 11/26/2008 | 11/08 | (081501) Hochman, Salkin and DeRoy | 10410 | 636.00 |
| 12/3/2008 | 12/08 | (192114) SulmeyerKupetz | 10415 | 25,000.00 |
| | | **Total** | | **$   28,248.97** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 5

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

B10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT **CENTRAL** DISTRICT OF **CALIFORNIA** | | PROOF OF CLAIM |
| --- | --- | --- |

Name of Debtor:
EZRI NAMVAR

Case Number:
2:08-32349-BR

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
CANYON SPRINGS SHOPPING CENTER, LLC, a California limited liability company

Name and address where notices should be sent:
Canyon Springs Shopping Center, LLC
9301 Wilshire Boulevard, Suite 515
Beverly Hills, California 90210
Telephone number: 310-858-6955

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
(If known)

Filed on: _____

Name and address where payment should be sent (if different from above):




Telephone number:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. Amount of Claim as of Date Case Filed:    $ *Unliquidated*

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

2. Basis for Claim: Security For Money Loaned
(See instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies debtor: _____
3a. Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

4. Secured Claim (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff:  ☐ Real Estate  ☐ Motor Vehicle  ☒ Other
Describe: Pledge of Membership Interest Held by Debtor in Parax, LLC

Value of Property: $ _____  Annual Interest Rate 10%

Amount of arrearage and other charges as of time case filed included in secured claim,

if any: $ _____  Basis for perfection: Voluntary-UCC-1    *See attached*

Amount of Secured Claim: $ _____  Amount Unsecured: $ _____

6. Credit: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See instruction 7 and definition of "redacted" on reverse side.)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(c). If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(___).

Amount entitled to priority:

$ _____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

Date:
11/10/2009

Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

Canyon Springs Shopping Center, LLC
By: _____ [signature]
Isaac Moradi, Managing Member

FOR COURT USE ONLY

American LegalNet, Inc.
www.FormsWorkflow.com

# EXHIBIT 

B 10 (Official Form 10) (12/08) -- Cont.

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the bankruptcy debtor's name, and the bankruptcy case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is located at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if the trustee or another party in interest files an objection to your claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). If the claim is based on the delivery of health care goods or services, see instruction 2. Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

### DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity owed a debt by the debtor that arose on or before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment on a debt owed by the debtor that arose on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car.

A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax-identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. §101 et seq.), and any applicable orders of the bankruptcy court.

American LegalNet, Inc.
www.FormsWorkflow.com

## ATTACHMENT TO PROOF OF CLAIM

### In Re Ezri Namvar
### United States Bankruptcy Court, Central District of California
### Case No. 2:08-32349

This attachment to Proof of Claim in the above-referenced case is submitted by Canyon Springs Shopping Center, LLC, a California limited liability company ("Secured Party").

### Attached Documentation In Support of Claim

1.   Amended and Restated Secured Promissory Note dated July 29, 2008 by Namco Capital Group, Inc., a California corporation ("Namco") in favor of Secured Party in the principal amount of $6,198,506.65 (the "Promissory Note");

2.   Assignment and Security Agreement dated July 29, 2008 (the "Security Agreement") by Ezri Namvar and Ilana Namvar, as Trustees of the Namvar Family Trust dated December 4, 1994 (the "Trust"), Beshmada, LLC, a California limited liability company ("Beshmada"), Ramin Namvar ("Ramin") and Homayoun Namvar ("Homayoun") (the Trust, Beshmada, Ramin and Homayoun are sometimes collectively referred to herein as "Pledgors");

3.   UCC-1 Financing Statement (File #08-7167062592), filed as of July 30, 2008, listing the Trust as Debtor, Secured Party as Secured Party, and listing, as collateral, "all of Debtor's right, title and interest to Membership Interests in Parox, LLC, a California limited liability company ("Parox");

4.   Schedule Of Principal and Interest Owing Under Note Through November 10, 2009.

5.   Schedule of Legal Fees Incurred In Connection With Note Through November 10, 2009.

### Overview of Obligation

Namco entered into and delivered the Promissory Note in favor of Secured Party to evidence a loan from Namco to Secured Party in the principal amount of $6,198,506.65. To secure Namco's obligations under the Promissory Note, among other things, (1) Pledgors pledged the collateral pursuant to the Security Agreement, which collateral includes, by way of illustration and not of limitation, the membership interests held by Pledgors in Parox, and (2) Pledgors granted to Secured Party a first-priority security interest in and to such collateral, as evidenced by the UCC-1 noted above.

Among other things, Namco defaulted on its obligations under the Promissory Note by failing to pay interest and principal when due and payable thereunder. As a result, the obligation owing with respect to the Promissory Note, as of November 10, 2009 includes,

JMP\ 603737.1                                1

among other things, (1) the entire principal amount of $6,198,506.65, plus (2) interest in the amount of $1,076,969.86, plus (3) permitted costs and expenses in the principal amount of $85,377.33. The obligations due under the Promissory Note continue to accrue interest at the rate of 10% per annum pursuant to the terms of the Promissory Note. Secured Party has not received any payment from Namco, any guarantor, or any other person or entity with respect to this obligation since September 9, 2008.

Secured Party has not received sufficient information to estimate the value of the membership interests in Parox as of the date hereof, although Secured Party believes in good faith that the fair market value of such collateral is significantly in excess of the secured obligation owing to Secured Party.

It is Secured Party's understanding and belief that the Trust, as a revocable trust, is an asset of the bankruptcy estate of Ezri Namvar, debtor in the above-listed case.

JMP\ 603737.1

2

**AMENDED AND RESTATED
SECURED PROMISSORY NOTE**

$6,198,506.65              LOS ANGELES, CALIFORNIA                      July 29, 2008

FOR VALUE RECEIVED, Namco Capital Group, Inc., a California corporation ("*Borrower*"), promises to pay to Canyon Springs Shopping Center, LLC, a California limited liability company (including any subsequent holder hereof, "*Lender*"), or its order, at its office located at 9301 Wilshire Blvd. Suite 515, Beverly Hills, CA 90210, or at such other place as the holder hereof may designate, in lawful money of the United States of America, the principal sum of Six Million One Hundred Ninety Eight Thousand Five Hundred Six and 65/100 Dollars ($6,198,506.65), together with interest which accrues on the outstanding principal balance from time to time, until paid in full in accordance with the terms, conditions and provisions as hereinafter set forth in this Amended and Restated Promissory Note (this "*Note*"). This Note amends, restates, and supersedes that certain promissory note dated July 1, 2008, by Borrower in Favor of Lender in the amount of $6,198,506.65.

**INTEREST RATE.** Interest on the outstanding principal balance of this Note shall be computed and calculated based upon a three hundred sixty (360) day year and actual days elapsed and shall accrue at the rate of Eight Percent (8%) per annum (the "*Note Rate*") on the unpaid principal balance of this Note from time to time.

**PRINCIPAL AND INTEREST PAYMENTS.** Payments of interest only shall be due and payable monthly in arrears during the term of this Note, effective July 1, 2008. Payments on this Note shall be due and payable commencing on the first calendar day of the first full calendar month following the funding of this Note, and continuing on the first day of each successive calendar month thereafter until the Maturity Date (defined below). As additional consideration to the Lender for making the loan, this Note has been cross-collateralized by personal guaranties as well as limited liability company membership interests in Pervez, LLC, a California limited liability company, held by The Namvar Family Trust dated December 5, 1994, Beshrada, LLC, a California limited liability company, Homayoun Namvar and Ramin Naaraz, who have materially benefited by the Loan made by the Lender to the Borrower. Upon the Maturity Date, the entire unpaid obligation outstanding under this Note, and any other and/or instruments which further evidence or secure the indebtedness evidenced by this Note shall become due and payable in full (collectively, the "*Loan Documents*")

All payments due hereunder, including payments of principal and interest, shall be made to Lender in United States Dollars and shall be in the form of immediately available funds acceptable to the holder of this Note. Payments for any month which is not a full calendar month shall be prorated on the basis of a thirty (30) day month, based on the actual number of days elapsed.

**APPLICATION OF PAYMENTS.** All payments received by Lender from, or for the account of Borrower, due hereunder shall be applied by Lender, in its sole and absolute discretion, in the following manner, or in any other order or manner as Lender chooses:

  a.    First. To pay any and all interest due, owing and accrued under this Note;

  b.    Second. To pay any and all costs, advances, expenses or fees due, owing and payable to Lender, or paid or incurred by Lender, arising from or out of this Note, and the other Loan Documents; and

  c.    Third. Payment of the outstanding principal balance on this Note.

1

All records of payments received by Lender shall be maintained at Lender's office, and the records of Lender shall, absent manifest error, be binding and conclusive upon Borrower. The failure of Lender to record any payment or expense shall not limit or otherwise affect the obligations of Borrower under this Note.

**MATURITY DATE.** On December 31, 2008 (the "*Maturity Date*"), the entire unpaid principal balance of this Note, and all unpaid accrued interest thereon, and all other charges outstanding under this Note and/or the other Loan Documents, shall be due and payable without demand or notice. In the event that Borrower does not pay this Note in full on the Maturity Date then, as of the Maturity Date and thereafter until paid in full, the interest accruing on the outstanding principal balance hereunder shall be computed, calculated and accrued on a daily basis at the Default Rate, as defined below.

**UNPAID INTEREST, CHARGES AND COSTS.** Interest, late charges, costs or expenses that are not received by Lender within five (5) calendar days from the date such interest, late charges, costs, or expenses become due, shall, at the sole discretion of Lender, be added to the principal balance and shall from the date due bear interest at the Default Rate until paid.

**HOLIDAY.** Whenever any payment to be made under this Note shall be due on a day other than a day on which Lender is open for business ("*Business Day*"), including Saturdays, Sundays and legal holidays generally recognized by banks doing business in California, then the due date for such payment shall be automatically extended to the next succeeding Business Day, and such extension of time shall in such cases be included in the computation of the interest portion of any payment due hereunder.

**NO OFFSETS OR DEDUCTIONS.** Except as expressly permitted by this Note, all payments under this Note shall be made by Borrower without any offset, decrease, reduction or deduction of any kind or nature whatsoever, including, but not limited to, any decrease, reduction or deduction for, or on account of, any offset, present or future taxes, present or future reserves, imposts or duties of any kind or nature, that are imposed or levied by or on behalf of any government or taxing agency, body or authority by or for any municipality, state or country. If at any time, present or future, Lender shall be compelled, by any Law, rule, regulation or any other such requirement which on its face or by its application requires or establishes reserves, or payment, deduction or withholding of taxes, imposts or duties, to act such that it causes or results in a decrease, reduction or deduction (as described above) in payment received by Lender under this Note, then Borrower shall pay to Lender such additional amounts, as Lender shall deem necessary and appropriate, such that every payment received under this Note, after such decrease, reserve, reduction, deduction, payment or required withholding, shall not be reduced in any manner whatsoever. (However, the foregoing shall not be applicable to the income taxes of Lender or other taxes imposed on the revenues of Lenders generally.)

**DEFAULT.** Any one or more of the following events or occurrences shall constitute a default under this Note (hereinafter "*Default*"):

      (i)     Lender does not receive a payment in the amount and within the time and manner as set forth herein, provided that with regard to monthly payments, Borrower shall be allowed a three (3) day grace period before the failure to make the payment will be a Default; or

      (ii)    There shall be a default or event of default under any of the Loan Documents, while default or event of default is not remedied during any applicable cure period; or

      (iii)   Borrower or any of its agents, officers, members, partners, or any of the additional named individuals or entities which have collateralized their membership interest as set forth in

2

the loan documents, secure any additional loans, or any of them refinance any existing loan or further encumbers various collaterals or assets of the any entities of which such membership interests have been collateralized under the terms of this Promissory Note or any other Loan Documents without obtaining the prior written consent of Lender.

Upon the occurrence of a Default hereunder, Lender may, in its sole and absolute discretion, declare the entire unpaid principal balance, together with all accrued and unpaid interest thereon, and all other amounts and payments due hereunder, immediately due and payable, without notice or demand. Further, in case of Borrower's default under the terms of this Promissory Note, Lender may proceed against any one or all of the assets listed and collateralized as security for this loan.

DEFAULT RATE. From and after the occurrence of any Default in this Note whether by non-payment, maturity, acceleration, non-performance or otherwise, and until such Default has been cured, all outstanding amounts under this Note (including, but not limited to, interest, costs and late charges) shall bear interest at a cumulative monthly rate ("Default Rate") equal to the greater of two percent (2.0%) over the Note Rate, or the highest rate allowed by applicable law.

PREPAYMENT. The principal amount of this Note may be prepaid in whole or in part without any premium or penalty; provided, however, that written notice of prepayment is received by Lender at least five (5) days prior to the date of payment. Any such prepayment shall not result in a reamortization, deferral, postponement, suspension, or waiver of any and all principal or other payments due under this Note.

LATE CHARGES. Time is of the essence for all payments and other obligations due under this Note. Borrower acknowledges that if any payment required under this Note is not received by Lender within five (5) days after the same becomes due and payable, Lender will incur extra administrative expenses (i.e., in addition to expenses incident to receipt of timely payment) and the loss of the use of funds in connection with the delinquency in payment. Because, from the nature of the case, the actual damages suffered by Lender by reason of such administrative expenses and loss of the use of funds would be impracticable or extremely difficult to ascertain, Borrower agrees that ten percent (10%) of the amount of the delinquent payment, together with interest accruing on the entire principal balance of this Note at the Default Rate, as provided above, shall be the amount of damages which Lender is entitled to receive upon each breach, in compensation therefor. Therefore, Borrower shall, in each event, without further demand or notice, pay to Lender, as Lender's monetary recovery for each extra administrative expenses and loss of use of funds, liquidated damages in the amount of ten percent (10%) of the amount of the delinquent payment (in addition to interest at the Default Rate). The provisions of this paragraph are intended to govern only the determination of damages in the event of a breach in the performance of Borrower to make timely payments hereunder. Nothing in this Note shall be construed as in any way giving Borrower the right, express or implied, to fail to make timely payments hereunder, whether upon payment of such damages or otherwise. The right of Lender to receive payment of such liquidated and actual damages, and receipt thereof, are without prejudice to the right of Lender to collect such delinquent payments and any other amounts provided to be paid hereunder or under any of the Loan Documents, or to declare a default hereunder or under any of the Loan Documents.

SECURITY. This Note is secured by an Assignment and Security Agreement dated July ___, 2008, cross collateralizing membership interests of Bedrossk, LLC, a California limited liability company, The Nemvar Family Trust, Homayoun Nemvar, and Ramin Nemvar, in Parox, LLC, a California limited liability company. Each of Esri Nemvar, Homayoun Nemvar and Ramin Nemvar has additionally personally guaranteed the payment of this Note and any additional amounts due under this Note.

3

COSTS AND EXPENSES. Borrower hereby agrees to pay any and all costs or expenses paid or incurred by Lender by reason of, as a result of, or in connection with the enforcement of this Note, the Deed of Trust, or any other Loan Documents, including, but not limited to, any and all attorney's fees and related costs when such costs or expenses are paid or incurred in connection with the enforcement of this Note, the Deed of Trust, and the other Loan Documents, or any of them, the protection or preservation of the collateral or security for this Note, or any other rights, remedies or interests of Lender, whether or not suit is filed. Borrower's agreement to pay any and all such costs and expenses includes, but is not limited to, costs and expenses incurred in or in connection with any bankruptcy proceeding, in enforcing any judgment obtained by Lender and in connection with any and all appeals therefrom, and in connection with the monitoring of any bankruptcy proceeding and its effect on Lender's rights and claims for recovery of the amounts due hereunder, any proceeding concerning relief from the automatic stay, use of cash collateral, proofs of claim, approval of a disclosure statement or confirmation of, or objections to confirmation of, any plan of reorganization. All such costs and expenses are immediately due and payable to Lender by Borrower upon demand therefor by Lender.

WAIVERS. Borrower hereby waives grace, diligence, presentment, demand, notice of demand, dishonor, notice of dishonor, protest, notice of protest, any and all exemption rights against the indebtedness evidenced by this Note and the right to plead any statute of limitations as a defense to the repayment of all or any portion of this Note, and interest thereon, to the fullest extent allowed by law, and all compensation of cross-demands pursuant to California Code of Civil Procedure Section 431.70. No delay, omission or failure on the part of Lender in exercising any right or remedy hereunder shall operate as a waiver of such right or remedy or any other right or remedy of Lender.

MAXIMUM LEGAL RATE. This Note is subject to the express condition that at no time shall Borrower be obligated, or required, to pay interest on the principal balance at a rate which could subject Lender to either civil or criminal liability as a result of such rate being in excess of the maximum rate which Lender is permitted to charge. If, by the terms of this Note, Borrower is, at any time, required or obligated to pay interest on the principal balance at a rate in excess of such maximum rate, then the rate of interest under this Note shall be deemed to be immediately reduced to such maximum rate and interest payable hereunder shall be computed at such maximum rate and any portion of all prior interest payments in excess of such maximum rate shall be applied, or shall retroactively be deemed to have been payments made, in reduction of the principal balance, as the case may be.

AMENDMENT; GOVERNING LAW. This Note may be amended, changed, modified, terminated or canceled only by a written agreement signed by the party against whom enforcement is sought for any such action. This Note shall be governed by, and construed under, the Laws of the State of California.

AUTHORITY. Borrower, and each person executing this Note on Borrower's behalf, hereby represents and warrants to Lender that, by its execution below, Borrower has the full power, authority and legal right to execute and deliver this Note and that the indebtedness evidenced hereby constitutes a valid and binding obligation of Borrower without exception or limitation. In the event that this Note is executed by more than one person or entity, the liability hereunder shall be joint and several. Any married person who is obligated on this Note, directly or indirectly, agrees that recourse may be had to such person's separate property in addition to any and all community property of such person.

LENDER'S RIGHT TO TRANSFER. Borrower acknowledges and agrees that Lender has the right to transfer, assign or hypothecate all or any part of the Note, to sell participations therein, and to substitute one or more new loans for all or any part of this Note in favor of Lender, and/or to otherwise take such other action as Lender may deem appropriate or desirable in connection with this Note; provided, however, that such transfer, assignment, hypothecation or participation shall be at no material expense to Borrower, and the principal amount and interest rate of this Note shall not be increased, nor shall the term

4

hereof be shortened, without Borrower's consent. Borrower agrees that it shall cooperate fully with Lender in connection with this paragraph and shall execute, and where appropriate, acknowledge, such documents as Lender or its assignee may require in connection therewith.

**LENDER'S RIGHT TO CURE.** Lender shall have the full right to cure any default under, or to pay any interest under or otherwise satisfy, any obligations under or with respect to this Note and the other Loan Documents, and/or the Property, and if Lender pays any amounts in connection therewith or cures any default thereunder, or makes any other advance to or for the benefit of Borrower and/or the Property, whether under this Note, under any of the Loan Documents, or otherwise, Lender may add any amounts so paid or advanced to the amounts evidenced by this Note and secured by the Loan Documents, and any and all such amounts shall be paid by Borrower to Lender upon demand, shall bear interest at the same rate specified to be paid on outstanding indebtedness under this Note until paid, and all such amounts shall be secured by the Loan Documents.

IN WITNESS WHEREOF, Borrower has executed this Note as of the day and year first above written.

Namco Capital Group, Inc.
A California corporation

By: Ezri Namvar
Its: President

5

61

## ASSIGNMENT AND SECURITY AGREEMENT

THIS ASSIGNMENT AND SECURITY AGREEMENT (this "*Agreement*"), dated as of July 29, 2008, is made by Hari Nemvar and Ilena Nemvar, as Trustees of the Nemvar Family Trust dated December 5, 1994, Beshmada, LLC, a California limited liability company, Homayoun Nemvar, and Ramin Nemvar (collectively, "*Assignors*"), in favor of Canyon Springs Shopping Center, LLC, a California limited liability ("*Lender*"), with reference to the following:

A.    Lender has made a certain loan to Namco Capital Group, Inc., a California corporation ("*Borrower*"), which loan is evidenced by a certain promissory note listed on Exhibit A attached hereto (the "*Note*"), made by Borrower in favor of Lender (the "*Loan*").

B.    Assignors collectively own 83% of the membership interests in Perox LLC, a California limited liability company (the "*Pledged Company*"). The Pledged Company owns the properties identified in Exhibit B attached hereto (collectively, the "*Properties*").

C.    Assignors have materially benefited from the Loan made by Lender to Borrower.

D.    As security for the obligations of Borrower under the Loan, Lender is requiring that Assignors execute and deliver this Agreement.

NOW, THEREFORE, in consideration of the premises, and for other good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, Assignors hereby agree as follows:

1.    Collateral Assignment. As security for performance of its obligations under the Loan, the performance of all other obligations of the Borrower, now existing or hereafter incurred under, arising out of or in connection with the Loan (all such obligations being herein collectively called the "*Obligations*"), Assignors hereby assign, transfer, pledge and grants, as collateral security, a security interest in all of Assignor's right, title and interest as members of the Pledged Company, including, without limitation: (i) all payments of whatever nature to become due to Assignors in respect of such interest and under the operating agreement of the Pledged Company (the "*Governing Documents*"), (ii) all of Assignors' respective claims, rights, powers, privileges, security interests, liens and remedies under the Governing Documents, and all of Assignors' membership interests in and to the Pledged Company, (iii) all of Assignor's rights under the Governing Documents to make determinations, to exercise any election (including, but not limited to, election of remedies) or option or to give or receive any notice, consent, amendment, waiver or approval together with full power and authority to demand, receive, enforce, collect or receipt for any of the foregoing or any property of the Pledged Company, to enforce or execute any checks, or other instruments or orders, to file any claims and to take any action which in the opinion of the Lender may be necessary or advisable in connection with any of the foregoing; provided that prior to the date upon which an event of default has occurred under the Note and any applicable notice and cure periods have expired (the "*Specified Date*"), Assignors shall, subject to the provisions of the following sentence, be entitled to exercise all of the rights assigned pursuant to this Paragraph 1. Assignors expressly acknowledge that if any default is outstanding hereunder or with respect to the Obligations, they shall not be entitled to receive any distributions from the Pledged Company until such time as the Obligations have been paid and performed in full, and any amounts received by Assignors in violation of this provision will be held in trust by Assignors for the benefit of Lender. All the rights assigned pursuant to this Paragraph 1 are hereinafter referred to as the "*Collateral*." From and after the

Specified Date, all of Assignors' respective right, title and interest in and to the Collateral shall cease to exist and Assignors shall have no further right to act in any respect as members in the Pledged Company. This Agreement constitutes a security agreement under the Commercial Code as enacted and in effect from time to time in California (the "UCC").

2.    _Limitation on Obligations of the Lender_.  Notwithstanding anything herein to the contrary, Assignors shall remain liable under the Governing Documents to observe and perform all of the conditions and obligations to be performed and observed by it thereunder. Prior to the transfer of title to the Lender following a foreclosure hereunder, the Lender shall not have any obligation or liability under the Governing Documents by reason of or arising out of this Agreement, nor shall the Lender be obligated in any manner to perform any of the obligations of any Assignor under or pursuant to the Governing Documents.

3.    _Remedies_.  Commencing on the Specified Date, the Lender shall be entitled to exercise all of the rights, powers and remedies (whether vested in it by this Agreement or by law) for the protection and enforcement of its rights in respect of the Collateral, and the Lender shall be entitled, without limitation, to exercise the following rights, which Assignors hereby agree to be commercially reasonable:

(a)    to give all consents, waivers and ratifications in respect of the Collateral and otherwise act with respect thereto as though it were the outright owner thereof (Assignors hereby irrevocably constituting and appointing the Lender the proxy and attorney-in-fact of Assignors, coupled with an interest, with full power of substitution to do so), including, without limitation, the right to exercise all of the rights and interests granted to the Lender pursuant to Paragraph 1 hereof; and

(b)    at any time or from time to time to sell, assign and deliver or grant options to purchase, all or any part of the Collateral, or any interest therein, at any public or private sale, without demand of performance, judicial hearing, advertisement or notice of intention to sell or of the time or place of sale or adjournment thereof or to redeem or otherwise (all of which are hereby waived, to the extent permitted by law, by Assignors), for cash, on credit or for other property, for immediate or future delivery without any assumption of credit risk, and for such price or prices and on such terms as the Lender in its absolute discretion may determine. Assignors hereby waive and release to the fullest extent permitted by law any right or equity of redemption with respect to the Collateral, whether before or after sale hereunder, and all rights, if any, of marshalling the Collateral and any other security for the Obligations or otherwise. At any such sale, unless prohibited by applicable law, the Lender may bid for and purchase all or any part of the Collateral so sold free from any such right or equity of redemption. The Lender shall not be liable for failure to collect or realize upon any or all of the Collateral or for any delay in so doing nor shall the Lender be under any obligation to take any action whatsoever with regard thereto. Assignors specifically acknowledge that the Lender might be unable to effect a public sale of the Collateral and might be required by applicable law to sell the Collateral by one or more private sales to a restricted group of purchasers who will be obligated to agree, among other things, to acquire the Collateral for the purchaser's own investment account with no view to the distribution or resale of the Collateral. Assignors further acknowledge that such private sales might result in the Lender's obtaining prices and terms which are less favorable than those which might have been obtained by public sales and agrees that such private sales will be deemed to have been made in a commercially reasonable manner and that the Lender will have no obligation to delay sale of the Collateral to permit any issuer to register the Collateral for public sale under the Securities Act of 1933.

4.    _Remedies Cumulative_.  Each right, power and remedy of the Lender provided for in this Agreement or any other related loan document now or hereafter existing at law or in equity or by statute shall be cumulative and concurrent and shall be in addition to every other such right, power or remedy.

2

The exercise or beginning of the exercise by the Lender of any one or more of the rights, powers or remedies provided for in this Agreement or now or hereafter existing at law or in equity or by statute or otherwise shall not preclude the simultaneous or later exercise by the Lender of all such other rights, powers or remedies, and no failure or delay on the part of the Lender to exercise any such right, power or remedy shall operate as a waiver thereof.

5.    **Application of Proceeds.** All moneys collected by the Lender upon any sale or other disposition of the Collateral, together with all other moneys received by the Lender hereunder, shall be applied:

(i) first, to the payment of all costs and expenses incurred by the Lender in connection with such sale, the delivery of the Collateral or the collection of any such moneys (including, without limitation, reasonable attorneys' fees and disbursements);

(ii) next, any surplus then remaining to the payment of any and all expenses and fees (including reasonable attorneys' fees and disbursements) incurred by the Lender under the Note;

(iii) next, any surplus then remaining to the payment of so much of the Obligations as constitutes unpaid principal;

(iv) next, any surplus then remaining to the payment of so much of the Obligations as constitutes accrued and unpaid interest; and

(v) finally, to the extent moneys remain after the application pursuant to preceding clauses (i), (ii), (iii) and (iv), to Assignors in accordance with the Governing Documents.

6.    **Purchasers of Collateral.** Upon any sale of the Collateral by the Lender hereunder (whether by virtue of the power of sale herein granted, pursuant to judicial process or otherwise), the receipt of the Lender or the officer making the sale shall be a sufficient discharge to the purchaser or purchasers of the Collateral so sold, and such purchaser or purchasers shall not be obligated to see to the application of any part of the purchase money paid over to the Lender or such officer or be answerable in any way for the misapplication or non-application thereof.

7.    **Indemnity.** Assignors agree to indemnify and hold harmless the Lender from and against any and all claims, demands, losses, judgments and liabilities (including liabilities for penalties) of whatsoever kind or nature and to reimburse the Lender for all costs and expenses, including reasonable attorneys' fees and disbursements, growing out of or resulting from this Agreement or the exercise by the Lender of any right or remedy granted to it hereunder (including, without limitation, any claims, losses and expenses related to or arising from liabilities or obligations of the Assignor, as a shareholder in the Pledged Company, existing on the Specified Date), including, without limitation, costs and expenses resulting from the negligence of the Lender but excluding those costs and expenses resulting from the gross negligence or willful misconduct of the Lender. If and to the extent that the obligations of any Assignors under this Paragraph 7 are unenforceable for any reason, Assignors hereby agree to make the maximum contribution to the payment and satisfaction of such obligations that is permissible under applicable law.

8.    **Further Assurances.** Assignors agree that, at their own expense, they will execute and deliver, and if requested, they will file under the UCC or any similar statute of any other jurisdiction, such financing statements, continuation statements, assignments and other documents in such offices as the

3

Lender may deem necessary or appropriate and wherever required or permitted by law in order to perfect and preserve the Lender's security interest in the Collateral and hereby authorizes the Lender to file financing statements and amendments thereto relative to all or any part of the Collateral without the signature of the Assignors where permitted by law, and agrees to do such further acts and things and to execute and deliver to the Lender such additional conveyances, assignments, agreements and instruments as the Lender may reasonably require or deem advisable to carry into effect the purposes of this Agreement or to further assure and confirm unto the Lender its rights, powers and remedies hereunder.

9.    Transfer by the Assignor; Amendment to Governing Documents.

(a)    Assignors will not sell or otherwise dispose of, grant any option with respect to, or mortgage, pledge or otherwise encumber any of the Collateral or any interest therein (except pursuant to this Agreement). Further, Assignors will not permit the Pledged Company to dispose of, grant any option with respect to, or mortgage, pledge or otherwise encumber any of the Pledged Company's assets or any interest therein, or otherwise incur any indebtedness (except as otherwise exists as of the date hereof).

(b)    Assignors will not consent to any amendment or modification of the Governing Document of the Pledged Company without the prior written consent of the Lender. Assignors shall give the Lender copies of all amendments and modifications to the Governing Documents promptly following the execution thereof.

(c)    Assignors shall not encumber or consent to encumber the Properties, title to which property is partially vested in Parox, LLC without the prior written consent of Lender. Except for a current indebtedness against the Properties, Assignors and each one of them shall not act to further encumber the property with any monetary or non-monetary encumbrances without the prior written consent of Lender. Recordation of any instrument in the chain of title of the Properties without Lender's prior written approval, reflecting further encumbrance of the Properties by the Assignors shall be a default under the terms of the Note as well as this Agreement.

10.    Representations, Warranties and Covenants of the Assignor.

(a)    Each Assignor represents and warrants that:

(i) it is the legal and beneficial owner of, and has good and marketable title to, the Collateral assigned hereunder, subject to no pledge, lien, mortgage, hypothecation, security interest, charge, option or other encumbrance whatsoever, except the liens and security interests created by this Agreement;

(ii) it has full power, authority and legal right to assign all the Collateral assigned hereunder;

(iii) this Agreement has been duly authorized, executed and delivered by it and constitutes a legal, valid and binding obligation of the Assignors enforceable in accordance with its terms;

(iv) no consent of any other party (including, without limitation, any lender, stockholder, member, individual, the Pledged Company, corporation, joint venture or creditor of the Assignor) and no consent, license, permit, approval or authorization of, exception by, notice or report to, or registration, filing or declaration with, any governmental authority is required in connection with the execution, delivery or performance by Assignors of this Agreement;

4

(v) neither the execution, delivery or performance of this Agreement nor the consummation of the transactions herein contemplated, nor compliance with the terms and provisions hereof will violate any legal requirement applicable to it, or will conflict, or will be inconsistent with, or will result in any breach of any provision of, or constitute a default under, any mortgage, indenture, lease, contract or other agreement, instrument or undertaking to which Assignor is a party or which is binding upon Assignor or upon any of its assets or the Governing Documents and will not result in the creation or imposition of any lien or encumbrance on any of the assets of Assignor except as contemplated by this Agreement;

(vi) there is no action, suit or proceeding pending, or to the best knowledge of Assignor, threatened against or affecting Assignor, in any court at law or in equity, or before or by any governmental authority, which might have a material adverse effect on the business or financial condition of Assignor. Assignor are not in default with respect to or under any legal requirement applicable to it;

(vii) the Governing Documents have been duly executed and delivered by Assignors, are unmodified, and are in full force and effect and constitute the legal, valid and binding obligations of Assignors and, to the best knowledge of Assignors, of each other party thereto. Assignors have received no notice of default, and to the best knowledge of Assignors, there is no default on the part of any party to the Governing Documents and no event has occurred and is continuing which, with the passage of time or the giving of notice or both or neither would constitute a default under the Governing Documents; and

(viii) by virtue of the execution and delivery by Assignors of this Agreement, the Lender will obtain a valid and perfected lien upon and security interest in all of the Collateral as security for the repayment of the Obligations, prior to the rights of all other parties and all other liens and encumbrances thereon and security interests therein.

(b)    Except as set forth in this Agreement, Assignors covenant and agree that it will defend the Lender's right, title and security interest in and to the Collateral and the proceeds thereof against the claims and demands of all persons whomsoever; and Assignors covenant and agree that they will have like title to and right to pledge any other property at any time hereafter pledged or assigned to the Lender as additional Collateral hereunder and will likewise defend the right thereto and security interest therein of the Lender.

11.    **Assignor's Obligations Absolute.** The obligations of Assignors under this Agreement shall be absolute and unconditional and shall remain in full force and effect without regard to, and shall not be released, suspended, discharged, terminated or otherwise affected by, any circumstance or occurrence whatsoever, including, without limitation (a) any renewal, extension, amendment or modification of or addition or supplement to or deletion from the Note, or any other instrument or agreement referred to therein, or any assignment or transfer of any thereof; (b) any waiver, consent, extension, indulgence or other action or inaction under or in respect of any such agreement or instrument or this Agreement; (c) any furnishing of any additional security to the Lender or any acceptance thereof or any release of any security by the Lender; (d) any limitation on any party's liability or obligations under any such instrument or agreement or any invalidity or unenforceability, in whole or in part, of any such instrument or agreement or any term thereof; or (e) any bankruptcy, insolvency, reorganization, composition, adjustment, dissolution, liquidation or other like proceeding relating to any Assignor, or any action taken with respect to this Agreement by any trustee or receiver, or by any court, in any such proceeding, whether or not any Assignor shall have notice or knowledge of any of the foregoing.

5

12.    Release; Termination. At the time of repayment and performance by the Assignors, as applicable, of the Obligations in full, the Lender agrees to take such actions, at the expense of Assignors, as Assignors may reasonably request to release from the lien of this Agreement the Collateral and to assign, transfer and deliver to Assignors (without recourse and without any representation or warranty) such of the Collateral as may be in the possession of the Lender and as has not theretofore been sold or otherwise applied, together with any moneys at the time held by the Lender hereunder.

13.    Notices. Except as otherwise expressly provided herein, all notices, certificates, reports or other communications hereunder shall be in writing (which shall include facsimile communications). Notices shall be sent by registered or certified mail, return receipt requested, facsimile transmission or hand delivery (including by overnight courier service), addressed as follows:

    If to the Lender:    Canyon Spring Shopping Center, LLC
                         9301 Wilshire Blvd. Suite 315
                         Beverly Hills, CA 90212
                         Att: Isaac Mizrad

    If to the Assignor:  Namco Capital Group, Inc.
                         12121 Wilshire Blvd., Suite 1400
                         Los Angeles, CA 90025
                         Attention: Hamid Taba
                         Telecopier: (310) 207-6908

Notices shall be deemed to have been given when delivered by hand, when transmitted by facsimile transmission, receipt confirmed, or three (3) Business Days after mailing. Any party, by notice given as provided in this Paragraph 13, may designate any further or different address to which subsequent notices or other communications shall be sent.

14.    Consent to Jurisdiction. To the extent permitted by law, Assignors hereby irrevocably:

        (i) consents in any suit, action or proceeding with respect to this Agreement being, at the option of the Lender, brought in any court of competent jurisdiction located in the State of California, as the Lender may elect;

        (ii) waives any objection that it may have now or hereafter to the venue of any such suit, action or proceeding in any such court and any claim that any of the foregoing have been brought in an inconvenient forum;

        (iii) (a) acknowledges the competence of any such court, (b) submits to the jurisdiction of any such court in any such suit, action or proceeding, and (c) agrees that the final judgment in any such suit, action or proceeding brought in any such court shall be conclusive and binding upon it and may be enforced in any court by a suit upon such judgment, a certified copy of which shall be conclusive evidence of its liability;

        (iv) submits to the non-exclusive jurisdiction of the State and Federal Courts in California and agrees that service of process in any suit, action or proceeding brought in any such court may be made by mailing a copy of such process by registered or certified mail postage prepaid, return receipt requested to the address shown above or to any other address of which it shall have given written notice to the Lender; and

6

(v) waives all claims of error by reason of any service effected in accordance with the provisions of subparagraph (iv) above and agrees that such service shall be deemed in every respect effective service upon it in any suit, action or proceeding and shall be taken and held to be valid personal service upon or personal delivery to it, to the fullest extent permitted by law.

15.    Miscellaneous. This Agreement shall be binding upon the successors and assigns of the Assignors and shall inure to the benefit of and be enforceable by the Lender and its successors and assigns. This Agreement may be changed, waived, discharged or terminated only by an instrument in writing signed by the parties hereto. THIS AGREEMENT SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH AND BE GOVERNED BY THE LAWS OF THE STATE OF CALIFORNIA, WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW. The headings in this Agreement are for purposes of reference only and shall not limit or define the meaning hereof. This Agreement may be executed in any number of counterparts, each of which shall be an original, but all of which shall constitute one instrument. In the event that any provision of this Agreement shall prove to be invalid or unenforceable, such provision shall be deemed to be severable from the other provisions of this Agreement which shall remain binding on all parties hereto.

16.    FINAL AGREEMENT. THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

7

IN WITNESS WHEREOF, Assignors have caused this Agreement to be executed as of the date first above written.

The Nemvar Family Trust dated 13/5/94

_____
Ezri Nemvar, Trustee

_____
Rena Nemvar, Trustee

BESHMADA, LLC

_____
Ezri Nemvar
Manager

_____
Homayoun Nemvar

_____
Ramin Nemvar

8

EXHIBIT A

Promissory Note

9

**EXHIBIT B**

**Properties Owned**

10



**SECRETARY OF STATE**
**STATE OF CALIFORNIA**

**UCC Filing Acknowledgement**

07/30/2008

Page 1 of 1

MASHIAN FRED F
9255 SUNSET BOULEVARD
SUITE 630
LOS ANGELES CA 90069

Filing Fee:    $5.00

Total Fee:    $5.00

The California Secretary of State's Office has received and filed your document. The information below reflects the data that was indexed in our system. Please review the information for accuracy. Included is an image of the filed document to assist you in your review. If you find a potential error, please notify the UCC Section at the number listed below at your earliest convenience.

Filing Type: Financing Statement        File Date: 07/30/2008          File Time: 16:35

Filing Number: 08-7167082592            Lapse Date: 07/30/2013

Debtor(s):
ORGANIZATION            THE NAMVAR FAMILY TRUST DATED DECEMBER 5, 1994

                        12121 WILSHIRE BOULEVARD #1400 LOS ANGELES CA
                        USA 90025

Secured Party(ies):
ORGANIZATION            CANYON SPRINGS SHOPPING CENTER, LLC

                        9301 WILSHIRE BOULEVARD #315 BEVERLY HILLS CA
                        USA 90210

Filing by the Secretary of State is not conclusive proof that all conditions for securing priority have been met. Ensuring that accurate information is on the document to be filed is the responsibility of the filing party. If this filing is challenged, the Secretary of State does not guarantee that the filing is legally sufficient to secure priority under UCC Article 9 and expressly disclaims any liability for failure of the filing party to secure priority resulting from the information contained in the filed document, or the lack of information on the filed document.

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

| | |
|---|---|
| A. NAME & PHONE OF CONTACT AT FILER [optional]<br>FRED MASHIAN<br>3102747501 | |
| B. SEND ACKNOWLEDGMENT TO: (Name and Address)<br>FRED F MASHIAN<br>9255 SUNSET BOULEVARD<br>SUITE 830<br>LOS ANGELES, CA 80069<br>USA | DOCUMENT NUMBER: 17064560002<br>FILING NUMBER: 08-7167322522<br>FILING DATE: 07/30/2008 16:25<br>IMAGE GENERATED ELECTRONICALLY FOR WEB FILING<br>THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY |

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| THE NAMVAR FAMILY TRUST DATED DECEMBER 5, 1994 | | | | | |
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS<br>2121 WILSHIRE BOULEVARD #1600 | CITY<br>LOS ANGELES | | STATE<br>CA | POSTAL CODE<br>90025 | COUNTRY<br>USA |
| 1d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 1e. TYPE OF ORGANIZATION<br>TRUST | 1f. JURISDICTION OF ORGANIZATION<br>CALIFORNIA | 1g. ORGANIZATIONAL ID#, if any | ☑ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| | | | | | |
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 2d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID#, if any | ☐ NONE |

**3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P)** - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| CANYON SPRINGS SHOPPING CENTER, LLC | | | | | |
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS<br>9301 WILSHIRE BOULEVARD #315 | CITY<br>BEVERLY HILLS | | STATE<br>CA | POSTAL CODE<br>90210 | COUNTRY<br>USA |

**4. This FINANCING STATEMENT covers the following collateral:**

ALL OF DEBTOR'S RIGHT, TITLE AND INTEREST TO MEMBERSHIP INTERESTS OF PAKOX, LLC, A CALIFORNIA LIMITED
LIABILITY COMPANY

| 5. ALT DESIGNATION: ☐ LESSEE/LESSOR  ☐ CONSIGNEE/CONSIGNOR  ☐ BAILEE/BAILOR  ☐ SELLER/BUYER  ☐ AG. LIEN  ☐ NON-UCC FILING | |
|---|---|
| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s)<br>[ADDITIONAL FEE]   [optional] ☐ All Debtors  ☐ Debtor 1  ☐ Debtor 2 |
| 8. OPTIONAL FILER REFERENCE DATA | |

FILING OFFICE COPY

Page 2

## UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT

9a. ORGANIZATION'S NAME
THE NAMVAR FAMILY TRUST DATED DECEMBER 5, 1994

OR 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX

10. MISCELLANEOUS:

DOCUMENT NUMBER: 17584505022
IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (11a or 11b) - do not abbreviate or combine names

| 11a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 11c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 11d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID#, if any | □ NONE |

12. □ ADDITIONAL SECURED PARTY'S or □ ASSIGNOR S/P'S NAME - insert only one name (12a or 12b)

| 12a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

13. This FINANCING STATEMENT covers □ timber to be cut or □ as-extracted collateral, or is filed as a □ fixture filing.

14. Description of real estate:

15. Name and address of RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

16. Additional collateral description:

17. Check only if applicable and check only one box.
Debtor is a □ Trust or □ Trustee acting with respect to property held in trust or □ Decedent's Estate

18. Check only if applicable and check only one box.
□ Debtor is a TRANSMITTING UTILITY
□ Filed in connection with a Manufactured-Home Transaction - effective 30 years
□ Filed in connection with a Public-Finance Transaction - effective 30 years

FILING OFFICE COPY

74

# NAMCO PROMISSORY NOTE

## Account Summary

| | Amount | Cumulative Int Balance | 2% Default Fees | 10% Late Fees & Penalties |
|---|---|---|---|---|
| Promissory Note Amount as of 7/29/08 | $ 6,198,506.65 | | | |
| **Add: 2008 Interest @8%/annum** | | | | |
| August 01-31, 200 | 41,323.38 | 41,323.38 | | |
| September 01-30, 200 | 41,323.38 | 82,646.76 | | |
| Payment received chk# dtd 9/9/08 | (82,646.76) | (0.00) | | |
| October 01-31, 2008 | 41,323.38 | 41,323.37 | 826.47 | 4,214.98 |
| November 01-30, 2008 | 41,323.38 | 82,646.75 | 1,652.94 | 8,429.97 |
| December 01-31, 2008 | 41,323.38 | 123,970.13 | 2,479.40 | 12,644.95 |
| **Total Interest 2008** | **123,970.13** | | **4,958.81** | **25,289.91** |
| | | | | Amount |
| Promissory Note Balance as of 12/31/08 | | 123,970.13 | | $ 6,352,725.49 |
| **Add: 2009 Interest @8%/annum** | - | | | |
| January 01-31, 2009 | 41,323.38 | 165,293.51 | 3,305.87 | 16,859.94 |
| February 01-28, 2009 | 41,323.38 | 206,616.88 | 4,132.34 | 21,074.92 |
| March 01-31, 2009 | 41,323.38 | 247,940.26 | 4,958.81 | 25,289.91 |
| April 01-30, 2009 | 41,323.38 | 289,263.64 | 5,785.27 | 29,504.89 |
| May 01-31, 2009 | 41,323.38 | 330,587.02 | 6,611.74 | 33,719.88 |
| June 01-30, 2009 | 41,323.38 | 371,910.39 | 7,438.21 | 37,934.86 |
| July 01-31, 2009 | 41,323.38 | 413,233.77 | 8,264.68 | 42,149.84 |
| August 01-31, 2009 | 41,323.38 | 454,557.15 | 9,091.14 | 46,364.83 |
| September 01-30, 2009 | 41,323.38 | 495,880.53 | 9,917.61 | 50,579.81 |
| October 01-31, 2009 | 41,323.38 | 537,203.91 | 10,744.08 | 54,794.80 |
| November 01-10, 2009 | 13,774.45 | 550,978.36 | 11,019.57 | 56,199.79 |
| **Total Interest Jan-Nov 10, 2009** | **427,008.24** | | **81,269.31** | **414,473.47** |
| | | | | **922,751.02** |
| Promissory Note Balance as of 11/10/2009 | | | | $ 7,275,476.51 |

**General Ledger (Cash)**
**Canyon Springs - (cany)**
**January 2008 - November 2009**

| Date | Period | Description | Refer | Amount |
|------|--------|-------------|-------|--------|
| | | **Legal** | | |
| 8/13/2008 | 08/08 | (120124) Law Offices of Fred F. Mashian | 10407 | 2,252.50 |
| 9/17/2008 | 09/08 | (120126) *Law Offices of Fred F. Mashian | 10408 | 360.47 |
| 11/26/2008 | 11/08 | (081501) Hochman, Salkin and DeRoy | 10410 | 636.00 |
| 12/3/2008 | 12/08 | (192114) SulmeyerKupetz | 10415 | 25,000.00 |
| 1/15/2009 | 01/09 | (192114) SulmeyerKupetz | 10418 | (10,000.00) |
| 1/15/2009 | 01/09 | (192114) SulmeyerKupetz | 10418 | 22,173.67 |
| 1/15/2009 | 01/09 | (120124) Law Offices of Fred F. Mashian | 10419 | 656.25 |
| 2/24/2009 | 02/09 | (192114) SulmeyerKupetz | 10420 | 9,560.96 |
| 3/3/2009 | 03/09 | (120124) Law Offices of Fred F. Mashian | 10421 | 300.00 |
| 3/16/2009 | 03/09 | (192114) SulmeyerKupetz | 10422 | 8,190.00 |
| 5/8/2009 | 05/09 | (192114) SulmeyerKupetz | 10425 | 8,537.07 |
| 5/20/2009 | 05/09 | (192114) SulmeyerKupetz | 10426 | 1,858.37 |
| 7/20/2009 | 07/09 | (192114) SulmeyerKupetz | 10427 | 2,556.10 |
| 7/20/2009 | 07/09 | (192114) SulmeyerKupetz | 10427 | 2,765.00 |
| 8/21/2009 | 08/09 | (192114) SulmeyerKupetz | 10428 | 3,700.75 |
| 9/21/2009 | 09/09 | (192114) SulmeyerKupetz | 10430 | 4,662.25 |
| 10/20/2009 | 10/09 | (192114) SulmeyerKupetz | 10431 | 2,167.94 |
| | | **Total** | | $ 85,377.33 |

B104 (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>R. TODD NEILSON, solely in his capacity as chapter 11 trustee for EZRI NAMVAR, | DEFENDANTS<br>CANYON SPRINGS SHOPPING CENTER, LLC, a California limited liability company, |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Dean A. Ziehl (CA Bar No. 84529)<br>Alan J. Kornfeld (CA Bar No. 130063)<br>Gillian N. Brown (CA Bar No. 205132)<br>PACHULSKI STANG ZIEHL & JONES LLP<br>10100 Santa Monica Blvd., 11th Floor<br>Los Angeles, CA  90067<br>Email: dziehl@pszjlaw.com<br> gbrown@pszjlaw.com<br>Telephone:  (310) 277-6910; Facsimile:  (310) 201-0760 | ATTORNEYS (If Known) |

| PARTY (Check One Box Only)<br>☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☐ Other<br>☒ Trustee | PARTY (Check One Box Only)<br>☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor    ☐ Other<br>☐ Trustee |
|---|---|

CAUSE OF ACTION (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
AVOIDANCE OF FRAUDULENT TRANSFERS PER 11 U.S.C. §§544(b), 548, AND 550; OBJECTIONS TO CLAIMS PER 11 U.S.C. §§502(b) AND 502(d).

### NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☒ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $  0 |

Other Relief Sought

American LegalNet, Inc.
www.FormsWorkflow.com

B104 (FORM 104) (08/07), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>NAMCO CAPITAL GROUP, INC. | BANKRUPTCY CASE NO.<br>2:08-bk-32349-BR | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central District of California | DIVISION OFFICE<br>Los Angeles | NAME OF JUDGE<br>The Honorable Barry Russell |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>*/s/ Gillian N. Brown* | | |
| DATE<br>January 27, 2011 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>GILLIAN N. BROWN | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

American LegalNet, Inc.
www.FormsWorkflow.com

| Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number | FOR COURT USE ONLY |
|---|---|
| Dean A. Ziehl (CA Bar No. 84529)<br>Alan J. Kornfeld (CA Bar No. 130063)<br>Gillian N. Brown (CA Bar No. 205132)<br>PACHULSKI STANG ZIEHL & JONES LLP<br>10100 Santa Monica Blvd., 11th Floor<br>Los Angeles, CA  90067<br>Email: dziehl@pszjlaw.com<br>       gbrown@pzjlaw.com<br>Tel:  (310) 277-6910; Fax:  (310) 201-0760<br>*Attorney for Plaintiff* Special Counsel for R. Todd Neilson, Chapter 11 Trustee for Ezri Namvar | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| In re:<br>NAMCO CAPITAL GROUP, INC., a California corporation,<br><br><br><br>          Debtor. | CHAPTER 11<br><br>CASE NUMBER 2:08-bk-32349-BR<br><br>ADVERSARY NUMBER 2:11-ap-_____-BR |
|---|---|
| R. TODD NEILSON, solely in his capacity as chapter 11 trustee for EZRI NAMVAR,<br><br>          Plaintiff(s),<br><br>vs.<br><br>CANYON SPRINGS SHOPPING CENTER, LLC, a California limited liability company,<br><br>          Defendant(s). | *(The Boxes and Blank Lines below are for the Court's Use Only) (Do Not Fill Them In)*<br><br>**SUMMONS AND NOTICE OF STATUS CONFERENCE** |

TO THE DEFENDANT: A Complaint has been filed by the Plaintiff against you. If you wish to defend yourself, you must file with the Court a written pleading, in duplicate, in response to the Complaint. You must also send a copy of your written response to the party shown in the upper left-hand corner of this page. Unless you have filed in duplicate and served a responsive pleading by _____, the Court may enter a judgment by default against you for the relief demanded in the Complaint.

A Status Conference on the proceeding commenced by the Complaint has been set for:

| Hearing Date: | Time: | Courtroom: | Floor: |
|---|---|---|---|
| ☒  255 East Temple Street, Los Angeles | | ☐  411 West Fourth Street, Santa Ana | |
| ☐  21041 Burbank Boulevard, Woodland Hills | | ☐  1415 State Street, Santa Barbara | |
| ☐  3420 Twelfth Street, Riverside | | | |

PLEASE TAKE NOTICE that if the trial of the proceeding is anticipated to take less than two (2) hours, the parties may stipulate to conduct the trial of the case on the date specified, instead of holding a Status Conference. Such a stipulation must be lodged with the Court at least two (2) Court days before the date set forth above and is subject to Court approval. The Court may continue the trial to another date if necessary to accommodate the anticipated length of the trial.

Date of Issuance: _____

**KATHLEEN J. CAMPBELL**
**Clerk of Court**

By: _____
        *Deputy Clerk*

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

American LegalNet, Inc.
www.FormsWorkFlow.com